[No. C049391. Third Dist. Jan. 31, 2006.]

KAUFMAN & BROAD COMMUNITIES, INC., et al., Cross-complainants and Respondents, v.
PERFORMANCE PLASTERING, INC., Cross-defendant and Appellant.

**COUNSEL**

Farmer, Murphy, Smith & Alliston, George E. Murphy and Suzanne M. Nicholson for Cross-defendant and Appellant.

Cooper, White & Cooper, Kathleen F. Carpenter, Dee A. Ware and Dafna G. Levi for Cross-complainants and Respondents.

**OPINION**

**ROBIE, J.**—In this case we hold when an insurance company seeks to provide a defense in pending litigation for a corporation that has been suspended for nonpayment of its taxes, the insurance company must intervene in the action to protect its own interests and those of its insured. The insurance company may not answer and litigate the lawsuit in the name of the suspended corporation without intervening in the case. Here, because its insured is barred from exercising corporate powers, rights, and privileges (Rev. & Tax. Code,[1] § 23301) and the insurance company is not a party, the insurance company's failure to intervene barred any application for fees and costs, even though the insurance company and insured were successful in persuading Kaufman & Broad Communities, Inc., to dismiss its lawsuit. We shall dismiss this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

After it was sued by homeowners in a construction defect case, Kaufman & Broad Communities, Inc. (Kaufman), filed a cross-complaint against Performance Plastering, Inc. (Performance Plastering). In its cross-complaint, Kaufman sued Performance Plastering for contractual and equitable indemnity, breach of contract, and declaratory relief. The Franchise Tax Board had previously suspended Performance Plastering because it failed to pay its taxes.

Performance Plastering's insurance company, CalFarm Insurance Company (CalFarm), employed a law firm, Read & Aliotti (Read), to file an answer to the cross-complaint. The answer to the cross-complaint Read filed designated the responding party as "Performance Plastering, Inc., a suspended corporation, by and through its general liability insurance carrier, CalFarm Insurance Company." CalFarm, however, did not move to intervene in the case. During the course of the litigation, Read discovered the contract under which Performance Plastering agreed to provide services to Kaufman had been canceled prior to any of the work at issue in the underlying lawsuit. On October 4, 2004, Read served a Code of Civil Procedure section 998 offer, offering to accept $10,000 in exchange for a mutual release of claims between the parties. Rather than accept the offer, Kaufman dismissed its cross-complaint on October 7, 2004.

---

[1] All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

Read then filed a memorandum of costs and brought a motion for attorney fees. Kaufman moved to strike the memorandum of costs and opposed the motion arguing CalFarm was not a party because it had not intervened in the action and Performance Plastering, as a suspended corporation, was not entitled to recover fees or costs because of its suspension.

The trial court denied the motion for attorney fees and granted the motion to strike the memorandum of costs. In its tentative ruling, the court concluded, "CalFarm is not a party to this action and has no standing to claim attorney's fees and costs. Performance Plastering is a suspended corporation and has no standing to claim attorney's fees or costs." In its final ruling, the court was "not persuaded that a non party to an action can assert a right to attorney's fees."

Read filed a timely notice of appeal captioned in the same manner as the other documents it filed. (Cal. Rules of Court, rule 2(a)(1).)

## DISCUSSION

### I

*CalFarm Was Not Entitled to Defend This Action in the Name of Performance Plastering*

#### A

*Statutory Analysis*

CalFarm argues that under section 19719, Performance Plastering was entitled to have CalFarm provide it counsel and defend this action in Performance Plastering's name without CalFarm intervening in the lawsuit. This argument requires us to examine the interplay between sections 19719 and 23301. These statutes do not allow the suspended corporation to exercise the powers and privileges of a corporation in good standing. Thus, an insurance company must intervene in the lawsuit to protect the rights of its insured suspended corporation.

Section 23301 provides, in relevant part, "the corporate powers, rights and privileges of a domestic taxpayer may be suspended" if it does not pay its taxes. The suspension of the corporate powers, rights, and privileges means a suspended corporation cannot sue or defend a lawsuit while its taxes remain

unpaid. (*Gar-Lo, Inc. v. Prudential Sav. & Loan Assn.* (1974) 41 Cal.App.3d 242, 244 [116 Cal.Rptr. 389].) Once a suspended corporation pays its taxes and obtains a certificate of revivor, however, the corporation may be allowed to carry on the litigation. (*Ibid.*) Its revivor will validate most otherwise invalid prior proceedings in the case. (*Ibid.*) The underlying purpose of this statute is to induce the corporation to pay its taxes. (*Ibid.*)

Prior to 1998, section 19719 provided, "Any person who attempts or purports to exercise the powers, rights, and privileges of a . . . corporation which has been suspended pursuant to Section 23301 . . . is punishable by a fine of not less than two hundred fifty dollars ($250) and not exceeding one thousand dollars ($1,000), or by imprisonment not exceeding one year, or both fine and imprisonment." (Stats. 1993, ch. 31, § 26, pp. 152–292.)

Thus, under the law as it existed in 1998, an insurance company could intervene in an action against its insured to protect the insurance company's own rights, but could not assert the rights of the corporation in that action. For example, in *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 344 [350, 70 Cal.Rptr.2d 255], the appellate court held an insurance company was entitled to intervene on its own behalf to protect its own rights, but also concluded the insurance company could not assert the subrogation rights of its insured. In that case, Truck Insurance Exchange (Truck Insurance) insured a roofing contractor named RCS Equities, Inc. (RCS). (*Id.* at p. 344.) The Franchise Tax Board had suspended RCS's corporate status for nonpayment of taxes. (*Ibid.*) Several actions were filed against RCS for personal injuries allegedly caused by defective roofing installed by RCS. (*Id.* at p. 345.) Transco Syndicate #1 (Transco), Alpine Insurance Company (Alpine), and Truck Insurance each separately provided insurance coverage to RCS. (*Id.* at p. 344.) Truck Insurance, on the one hand, accepted RCS's tender of defense for the personal injury claims. (*Id.* at p. 345.) Transco and Alpine, on the other hand, sued RCS seeking to rescind their insurance policies on the grounds of fraud. (*Ibid.*) As RCS was about to have its default judgment entered, Truck Insurance sought to intervene in that action and the trial court denied its motion. (*Ibid.*)

The appellate court reversed. (*Truck Ins. Exchange v. Superior Court, supra,* 60 Cal.App.4th at p. 351.) Under Code of Civil Procedure section 387, subdivision (a), "Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding." Under this section, " '[i]f proper procedures are followed [citation], the court has *discretion* to permit a nonparty to intervene in litigation pending between others, provided:

[¶] The nonparty has a *direct and immediate interest* in the litigation; and [¶] The intervention will *not enlarge* the issues in the case; and [¶] The reasons for intervention outweigh any opposition by the existing parties. [Citations.]' [Citation.]" (*Truck Ins. Exchange v. Superior Court, supra,* 60 Cal.App.4th at p. 346.) The appellate court concluded Truck Insurance had a direct interest in the litigation because the other insurers might be able to void their insurance policies with RCS by way of a default judgment in the underlying action. (*Id.* at p. 346.) On the one hand, denying Truck Insurance the right to intervene would result in the voiding of those policies eliminating a potential source of additional insurance for Truck Insurance to draw on to recoup payments Truck Insurance may have to make on behalf of RCS. (*Ibid.*) Thus, the pending litigation had a direct and substantial affect on Truck Insurance. (*Ibid.*) On the other hand, allowing Truck Insurance to intervene merely put the other insurance companies to the task of proving the grounds for rescission of the policies. (*Id.* at p. 347.)

The court concluded, however, that Truck Insurance could not intervene and assert any rights held by RCS, such as the right of subrogation. (*Truck Ins. Exchange v. Superior Court, supra,* 60 Cal.App.4th at pp. 349–350.) In asserting a subrogation claim, the insurer stands in the shoes of its insured, and has no greater rights than its insured. (*Id.* at p. 350.) Because the insured cannot pursue its rights in litigation, the insurer cannot do what its insured cannot do and is similarly barred. (*Ibid.*)

Noting an ambiguity in the statute which purported to "prohibit[] insurance companies from defending actions brought against [a] suspended corporation . . ." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1950 (1997–1998 Reg. Sess.) Apr. 21, 1998, p. 5), the Legislature amended section 19719, effective January 1999, to specifically exclude insurers or counsel retained by an insurer from coming within the scope of the statute. The Legislature added subdivision (b) to section 19719, which provides, "(b) This section shall not apply to any insurer, or to counsel retained by an insurer on behalf of the suspended corporation, who provides a defense for a suspended corporation in a civil action based upon a claim for personal injury, property damage, or economic losses against the suspended corporation, and, in conjunction with this defense, prosecutes subrogation, contribution, or indemnity rights against persons or entities in the name of the suspended corporation." (Stats. 1998, ch. 856, § 2.)

CalFarm argues this section allows it to file documents and defend the existing case in the name of the suspended corporation—Performance Plastering. We disagree.

While the enactment of the section exempted insurance companies from penal sanctions for participating in such litigation, it did not remove the disability applicable to suspended corporations under section 23301 nor did it authorize a new form of participation in a lawsuit—neither as a party nor intervener.

■ "Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.]" (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].) Thus, "[o]nly when the language of a statute is susceptible to more than one reasonable construction is it appropriate to turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning." (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055 [80 Cal.Rptr.2d 828, 968 P.2d 539].) Here, the language of the statute and the cognizable legislative history of this new subdivision support the conclusion that the insurance company must intervene in the action to provide a defense for a suspended corporation.[2]

■ The language of section 19719, subdivision (b), does not sanction CalFarm's argument it may use the name of its insured suspended corporation to continue the litigation. Under section 23301, a corporation suspended for the failure to pay its taxes is unable to exercise its "corporate powers, rights and privileges" which, as we have already stated, includes the right to defend a lawsuit. Section 19719, subdivision (a), makes it a crime for any person "to exercise the powers, rights, and privileges of a corporation that has been suspended pursuant to Section 23301." Subdivision (b) of section 19719 only exempts the "insurer, or . . . counsel retained by an insurer on behalf of the suspended corporation," from these criminal penalties. Thus, section 19719 does not generally authorize the insurer to exercise the rights and powers of its corporate insured. This obviously includes the right to sue or defend a lawsuit or even to appear in the lawsuit. This statute does not authorize the insurance company to exercise those rights and powers in the corporation's name in a lawsuit. Instead, the only manner in which the insurer may exercise those powers is by intervening in the lawsuit under Code of Civil Procedure section 387 and asserting any defenses on behalf of its insured. There is nothing

---

[2] Of course, this would be unnecessary if the insurance company persuades its insured to pay its taxes and obtain a revivor.

within section 19719 that authorizes the insurance company to defend the litigation in the name of the suspended corporation.

██ Subdivision (b) of section 19719 allows an insurance company to provide a defense for a suspended corporation in certain actions and, in connection with this defense, prosecute subrogation, contribution or indemnity rights in the name of the suspended corporation. The statute, however, is silent as to the proper mechanism the insurance company may use to exercise this right. As such, there is some facial ambiguity or tension between section 19719, subdivision (b) and section 23301 that is sufficient to permit an examination of the legislative history of the 1998 enactment of subdivision (b).

In our prior opinion in this case, we detailed the cognizable legislative history of section 19719, subdivision (b). (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 39–42 [34 Cal.Rptr.3d 520].)

We have examined that legislative history and conclude nothing there contradicts the conclusion we have reached. In fact, a single statement contained within that history supports our conclusion. The enrolled bill report prepared by the Franchise Tax Board states in pertinent part, "Although this bill exempts the insurer from a misdemeanor prosecution, it does not provide the insurer the express opportunity to defend the suspended corporation without actually reviving the corporation from suspended status." If the company is revived, there is no need for section 19719, subdivision (b), as the corporation can then exercise its corporate powers. If, on the other hand, the corporation is not revived, the absence of any mechanism in the statute for the insurance company to assert the suspended corporation's claims supports the conclusion that the insurance company must intervene in the lawsuit to protect the rights of its insured. In that instance, the insurance company is exempt from criminal prosecution.

No case subsequent to the enactment of section 19719, subdivision (b), has expressly addressed the question of whether the insurance company can defend the action in the name of the suspended insured corporation, or whether it must intervene. Some cases, however, have sanctioned intervention as an appropriate approach. For example, in *Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 388 [100 Cal.Rptr.2d 807], the appellate court concluded the trial court abused its discretion in refusing to allow the insurance company (Reliance Insurance Company) to intervene in a lawsuit against the insured suspended corporation. In that case, the Wellses filed an

action against Campbell Moving & Storage (Campbell) for the loss of personal property. (*Id.* at pp. 384–385.) During the litigation, the Wellses filed a motion to strike Campbell's answer because it had been suspended and could not defend the action. (*Id.* at pp. 385–386.) Reliance responded to that motion by moving to intervene and the trial court denied that application. (*Id.* at p. 386.) The Sixth District Court of Appeal concluded the insurance company had a direct interest in the litigation. (*Id.* at pp. 386–387.) Under Insurance Code section 11580, a judgment creditor can sue the insurance carrier for the defendant against whom a judgment is obtained. (*Reliance Ins. Co. v. Superior Court, supra,* at p. 386.) As a result, where there is a danger that a judgment will be entered by default, the insurance carrier is entitled to intervene in the underlying case to contest its insured's fault or the available damages. (*Id.* at p. 387.) *O'Hearn v. Hillcrest Gym & Fitness Center, Inc.* (2004) 115 Cal.App.4th 491, 494, footnote 1 [9 Cal.Rptr.3d 342], comes to this same conclusion.

■ Applying this rule here, the notice of appeal in this matter purports to be brought by "Performance Plastering, Inc., a suspended corporation, by and through its general liability insurance carrier, CalFarm Insurance Company." Only a prevailing *party* is entitled to fees or costs. (Code Civ. Proc., §§ 1032, subd. (b), 1033.5, subd. (a).) ■ Because CalFarm never filed a motion to intervene in this case, it is not a party to this action and thus lacked standing to request any relief in the trial court. (*Lohnes v. Astron Computer Products* (2001) 94 Cal.App.4th 1150, 1153 [115 Cal.Rptr.2d 34].) Moreover, as a nonparty, an insurance company cannot pursue an appeal on behalf of its insured. (*Bates v. John Deere Co.* (1983) 148 Cal.App.3d 40, 53 [195 Cal.Rptr. 637].) Thus, to the extent that this notice of appeal was filed by CalFarm on its own behalf, we dismiss it. Moreover, because Performance Plastering continues to be a suspended corporation, lacking the power to pursue or defend litigation, we shall dismiss its appeal as well.

B

*This Result Furthers the Purpose of the Statute*

CalFarm argues allowing it to defend the action without intervening furthers section 19719's goal of making it easier for claimants to recover on judgments against suspended corporations.[3] As we have explained, the

---

[3] The addition of subdivision (b) to section 19719 served to protect a plaintiff's chance of recovery against the insurer of a suspended corporation. (See Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1950 (1997–1998 Reg. Sess.) Apr. 21, 1998, p. 5.)

language of the statute does not provide CalFarm with this procedural mechanism. Further, we question the premise of CalFarm's legislative intent argument—that requiring the insurer to intervene in the action will discourage it from defending its insured in the underlying action because the intervention might result in the waiver of coverage defenses the insurer may be entitled to assert in a direct action against it under Insurance Code section 11580.

 Insurance Code section 11580, subdivision (b)(2) (section 11580(b)(2)) provides insurance policies issued in California shall either contain the following provision or shall be construed as if this provision is in the policy: "A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." Thus, a judgment creditor who has prevailed in a lawsuit against an insured party may bring a direct action against the insurer subject to the terms and limitations of the policy. (*Garamendi v. Golden Eagle Ins. Co.* (2004) 116 Cal.App.4th 694, 709 [10 Cal.Rptr.3d 724].)

 It does not follow, however, that by intervening an insurance company waives coverage disputes in subsequent litigation under Insurance Code section 11580(b)(2). In the ordinary case, an insurer who provides counsel for its insured and defends the action waives its right to assert coverage defenses unless it provides for an adequate reservation of its rights. (*Garamendi v. Golden Eagle Ins. Co.*, *supra*, 116 Cal.App.4th at p. 721.) Applying that to litigation where the insured is unable to assert its rights, an insurer who seeks to intervene and protect its coverage defenses may provide an explicit reservation of rights to its client and allege that reservation of rights within its pleading to put the plaintiff on notice that the insurance company is reserving those rights and asserting coverage defenses. Thus, the insurance company may avoid any claim it intentionally waived its reservation of rights. (See *ibid.* [adequate reservation of rights bars claim of waiver of coverage defenses].)

Moreover, merely intervening in the underlying lawsuit will not bring the doctrines of res judicata and collateral estoppel into play to create a bar to available coverage defenses. As explained in *McNulty v. Copp* (1954) 125 Cal.App.2d 697, 703 [271 P.2d 90], a judgment in one lawsuit is res judicata only on the same cause of action in a second lawsuit. Matters not at issue are not res judicata in subsequent litigation. (*Id.* at p. 708.) As applied here, the cause of action in the initial action against the insured (Performance Plastering) is based upon the contractual or tort cause of action that arises

between Performance Plastering and the third party (Kaufman). If CalFarm intervened, and a judgment was entered against CalFarm and Performance Plastering on the merits of that claim, that judgment would not act as a bar to the cause of action in the subsequent action under Insurance Code section 11580(b)(2). In that subsequent suit, the cause of action is the insurer's liability for the actions of its insured under the terms and limitations of the insurance contract. That these two causes of action are distinct is further evidenced by the fact that in the underlying action, the intervener may not enlarge the issues in the existing litigation to include coverage issues, but may only contest its insured's liability and damages. (*Reliance Ins. Co. v. Superior Court, supra,* 84 Cal.App.4th at pp. 386–387 [intervener may not enlarge issues by raising coverage].) As a result, where the insurer intervenes in the first action against the insurer and the suspended insured, there is no res judicata effect in the second action under Insurance Code section 11580(b)(2).

The result is no different under the doctrine of collateral estoppel. " '[I]n a new action on a different cause of action, the former judgment is not a complete merger or bar, but is effective as a collateral estoppel, i.e., it is conclusive on issues actually litigated between the parties in the former action.' [Citations.] [¶] '[A] former judgment is not a collateral estoppel on issues which might have been raised but were not; just as clearly, it is a collateral estoppel on issues which were raised, even though some factual matters or legal arguments which could have been presented were not.' " (*Interinsurance Exchange of the Auto. Club v. Superior Court* (1989) 209 Cal.App.3d 177, 181 [257 Cal.Rptr. 37], italics omitted.) Thus, to the extent that issues relevant to coverage were not actually litigated in the first lawsuit, the insurance company is not barred from asserting these issues in the second lawsuit under the doctrine of collateral estoppel. Where those issues were actually litigated in the initial action, due process is not offended by this result. The insurance company has not waived those issues, but has had a full and fair opportunity to litigate them. That is all due process requires.

We are not sympathetic to CalFarm's assertion that if it does not intervene in a pending lawsuit against a suspended insured, it may be bound by the principle of collateral estoppel as to issues actually determined in the underlying lawsuit because it had the ability to intervene under section 19719 and chose not to exercise that right.

In *Garamendi v. Golden Eagle Ins. Co., supra,* 116 Cal.App.4th at page 698, an insurer had a duty to defend its suspended corporate insured in an existing lawsuit. When the insurer discovered on the eve of trial that its insured's corporate status had been suspended, it chose to withdraw from a

lawsuit against its insured. (*Ibid.*) The court held the insurer was bound by the subsequent judgment as to any issues that had been decided in that first action under the principles of collateral estoppel. (*Id.* at pp. 711–712.) If the insurance company declines to intervene in a lawsuit that it is allowed to participate in without penalty to its coverage defenses, that is its choice. It is not unfair that an insurance company is not entitled to relitigate issues in a second lawsuit that it had the right to litigate in the initial lawsuit. Rather, that potential result will encourage the insurance company to participate in the initial action.

We further reject CalFarm's contention that allowing it to participate in the first action without intervention "increases the likelihood of recovery without additional, repetitive litigation." As demonstrated above, an insurance company's defenses based upon the terms and conditions of the insurance policy will not be waived or decided by its intervention in the first lawsuit. Rather, those issues will be reserved for resolution in a subsequent lawsuit under Insurance Code section 11580(b)(2). If the insurer has no coverage defenses, or its coverage defenses do not justify further litigation, the lawsuit is more likely to be resolved at the conclusion of the first action if the insurer has intervened as a party and participated. Without legitimate coverage issues to assert, the insurer is likely to pay the full amount of the judgment up to the policy limits. This result serves, rather than defeats, the requirement that the insurance company intervene in the initial lawsuit if it wishes to participate.

On the other hand, an intervening insurance company with meritorious coverage defenses will still likely require the injured party to prosecute a second action. That result, however, is not inevitable. While the insurer cannot unilaterally enlarge the issues upon its intervention (*Reliance Ins. Co. v. Superior Court, supra,* 84 Cal.App.4th at pp. 386–387), the insurer certainly may inform the third party of its likely coverage defenses in any subsequent lawsuit, or in collateral proceedings. To avoid the multiplicity of litigation and streamline this process, the parties could stipulate to allow the insurer to raise and litigate its coverage defenses in the initial lawsuit, thereby reducing repetitive litigation. Here, CalFarm should have moved to intervene if CalFarm wished to participate either on its own behalf, or on behalf of its insured.

## II

*Waiver*

CalFarm argues Kaufman waived Performance Plastering's lack of capacity under section 23301 because Kaufman failed to plead its incapacity at its earliest opportunity. We reject this claim for two separate reasons.

First, CalFarm failed to raise this argument in the trial court and thus forfeits that argument here. (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28 [21 Cal.Rptr.2d 104].)

Second, CalFarm's reliance on *Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599 [52 Cal.Rptr.2d 443] in support of its waiver argument is misplaced. There, on the first day of trial, Michael Abrams moved to dismiss Color-Vue, Inc.'s, complaint because Color-Vue, Inc., had been suspended for nonpayment of taxes. (*Id.* at p. 1602.) Color-Vue, Inc., moved for a short continuance to pay its taxes and obtain a certificate of revivor. (*Ibid.*) The trial court rejected Color-Vue's application and entered a default judgment against it. (*Ibid.*) The defunct corporation obtained its certificate of revivor within 15 days of its request and prior to the final entry of judgment in the action. (*Ibid.*) The appellate court concluded the trial court erred, "particularly in light of the fact that Color-Vue in fact paid its taxes and obtained a certificate of revivor within two weeks of the issue first being raised." (*Id.* at p. 1603.)

Unlike the corporation in *Color-Vue*, Performance Plastering here has never paid its taxes or even suggested it might do so. Rather, this case is controlled by *Gar-Lo, Inc. v. Prudential Sav. & Loan Assn.*, *supra*, 41 Cal.App.3d 242. There, in the trial court and again in a motion to dismiss the appeal, the defendant corporation argued the failure of the plaintiff to raise its status at the first opportunity operated to forfeit the defense. (*Id.* at pp. 243–244.) The appellate court rejected that argument as follows: "Here we have a corporation which indicates no intention to pay its delinquent franchise taxes. It claims, in effect, that it has acquired an irrevocable license to carry on litigation in this court in defiance of section 23301, by reason of respondent's failure to object in the trial court 'at the earliest opportunity presented.' Appellant's argument overlooks that the main purpose of the statutory suspension is to collect a tax, and that respondent is only an incidental beneficiary of that law. We do not believe the statute can be construed to give appellant the benefit it claims." (*Id.* at p. 244.) Thus, the court dismissed the appeal filed by the suspended corporate entity. (*Id.* at p. 245.)

Similarly here, Performance Plastering has expressed no indication of its desire to pay the corporate taxes due and owing and removing the disability it is under. Because this policy only incidentally benefits Kaufman, we conclude Kaufman's failure to assert this disability sooner in the litigation does not bar its claim here. We must therefore dismiss the appeal.

## DISPOSITION

The appeal is dismissed. Kaufman shall recover its costs on appeal. (Cal. Rules of Court, rule 27(a)(2).)

Sims, Acting P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 26, 2006, S141889.