APL CO. PTE. LTD., Plaintiff,

v.

VALLEY FORGE INSURANCE COMPANY, Defendant.

No. C 09–05641 MHP.

United States District Court, N.D. California.

Sept. 16, 2010.

Brenna E. Moorhead, Brian R. Blackman, Charles S. Donovan, Sheppard Mullin Richter & Hampton LLP, San Francisco, CA, for Plaintiff.

Gina Pearl Mak, Attorney at Law, Yvette Darilynn Roland, Duane Morris LLP, Los Angeles, CA, for Defendant.

## *MEMORANDUM & ORDER*

### Re: Cross-motions for Summary Judgment

MARILYN HALL PATEL, District Judge.

In this action, plaintiff APL Co. Pte. Ltd. ("APL"), a carrier of goods, filed suit against defendant Valley Forge Insurance Co. ("Valley Forge"). In another action before this court, *APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, No. C 05–00646, APL received a judgment against U.G. Co., Inc. ("U.G.") and Kamdar Global, LLC ("Kamdar"), two entities that had an interest in hair care products being carried on APL's ships, for damages APL suffered because of the improper packaging of those goods. U.G. had an insurance policy with Valley Forge that APL alleges covers the judgment in the underlying litigation. In the instant lawsuit, APL seeks to recover the judgment from Valley Forge pursuant to California Insurance Code section 11580. Before the court are APL and Valley Forge's cross-motions for summary judgment. Having considered the parties' arguments and submissions, and for the reasons discussed below, the court enters the following memorandum and order.

## BACKGROUND

### I. Procedural Background

As the court recounted in its order denying APL's previous motion for summary judgment, this dispute arises out of the underlying litigation, which was filed in 2005. In that suit, APL sued three defendants—UK Aerosols Ltd. ("UKA"), the shipper of the goods that ultimately caused injury to APL, U.G. and Kamdar—alleging that all three defendants were jointly and severally liable under a bill of lading for costs incurred cleaning up the leaked hair care items that were packaged for shipment by UKA. The complaint included causes of action against each of the defendants for both breach of contract and negligence. UKA defaulted, and default was entered against UKA in May 2006. U.G. and Kamdar, however, continued to defend the suit. In September 2006, the court granted U.G. and Kamdar's motion for summary judgment with respect to the negligence cause of action, but denied their motion with respect to the breach of contract claim.

In February 2007, confronted with cross-motions for summary judgment, the court granted summary judgment in favor of APL against U.G. and Kamdar on the breach of contract claims, and denied U.G. and Kamdar's motion for summary judgment. The court held that U.G. and Kamdar were obligated to indemnify APL under clauses 9 and 19 of the bill of lading for costs APL incurred to assess and clean up the damage caused by the leaking and hazardous cargo. Clause 9 of the bill of lading, entitled "Shipper–Packed Containers," provides, in part that:

i. If a Container has not been filled, packed, stuffed or loaded by the Carrier, the Carrier shall not be liable for loss of or damage to the Goods and the Merchant shall indemnify the Carrier against any loss, damage, liability or expense incurred by the Carrier, if such loss, damage, liability or expense has been caused by:

a. the manner in which the Container has been filled, packed, stuffed or loaded....

Docket No. 44 (Roland Dec.), Exh. B (Bill of Lading) at 3–4. In the underlying litigation, the court held that U.G. and Kamdar had an interest in the cargo; that U.G. and Kamdar were "Merchants" as defined in the bill of lading [1]; that the cargo was shipper-packed, in that it was packed by UKA, who was the shipper; that the containers involved in the damage were improperly packed; that the improper packing caused the resultant leaking and damage to APL; and that U.G. and Kamdar were therefore obligated under clause 9 to indemnify APL for the damages it suffered. *APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, No. C 05–00646 MHP, 2007 WL 607902, at *4–5 (N.D.Cal. Feb. 23, 2007) (Patel, J.).

On June 25, 2007, Valley Forge, U.G.'s insurer, moved to intervene for the limited purpose of pursuing an appeal on U.G.'s behalf. On August 2, 2007, the court granted Valley Forge's motion to intervene because U.G., which had its corporate status suspended by the state of California in 2006, was no longer able to legally defend itself in the lawsuit. Meanwhile, on June 26, 2007, this court entered judgment against U.G. and Kamdar and in favor of

1. The bill of lading defines the term "Merchant" as "the Shipper, Consignee, Receiver, Holder of the Bill of Lading, Owner of the cargo or Person entitled to possession of the cargo or having a present or future interest in the Goods and the servants and agents of any of these, all of whom shall be jointly and severally liable to the carrier for the payment of all Freight, and for the performance of the obligations of any of them under this Bill of Lading."

APL. The parties then entered into an amended judgment, under which APL was entitled to $733,963.10 in damages. Thereafter, the parties filed cross appeals of the court's rulings in September 2007. On September 21, 2009, the Ninth Circuit affirmed this court's grant of summary judgment in APL's favor. *APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947 (9th Cir. 2009)

## II. *Subsequent Litigation*

On November 19, 2009, Valley Forge filed an action against APL, U.G. and Kamdar in the Superior Court for the County of Los Angeles (the "Southern California action"), seeking a declaratory judgment that U.G.'s insurance policy does not cover the conduct at issue in the underlying litigation and that Valley Forge is not liable to APL for the judgment in the underlying litigation. On December 1, 2009, APL filed the instant action in this court against Valley Forge, seeking to recover, pursuant to California Insurance Code section 11580, the judgment in the underlying litigation.

On December 21, 2009, APL removed the Southern California action to the United States District Court for the Central District of California, alleging the existence of diversity jurisdiction and admiralty and maritime jurisdiction. In response, Valley Forge filed a motion for remand, contending that no grounds exist for jurisdiction in federal court. APL also filed a motion to transfer the Southern California action to this court. On March 16, 2010, Judge Morrow in the Central District granted Valley Forge's motion to remand. *Valley Forge Ins. Co. v. APL Co. Pte. Ltd.*, C 09–9323–MMM–VBK, Docket No. 22 (Civil Minutes), 2010 WL 960341 (C.D.Cal. Mar. 16, 2010).

## III. *The Insurance Policy*

Both the instant lawsuit and the Southern California action focus primarily on whether the judgment in the underlying litigation is covered under the insurance policy U.G. purchased from Valley Forge. Docket No. 44 (Roland Dec.), Exh. C (Insurance Documents).[2] The specific language of the provisions will be discussed in more detail below. As a general matter, however, it is undisputed (1) that absent any exclusions to the policy, the judgment in the underlying litigation would be covered, but (2) that the "Contractual Liability" exclusion to the policy applies. The sole contested issue regarding the interpretation of the policy is whether the "Insured Contract" exception to the "Contractual Liability" exclusion brings the judgment back within the policy's coverage.

## LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

---

**2.** Exhibit C to the Declaration of Yvette D. Roland appears to be a compilation of all of the documents that constituted the relevant insurance plan. Each of the documents has separate pagination. However, Valley Forge has, in the lower right-hand corner, consecutively paginated all of the documents attached to Roland's Declaration. For ease of reference, the court will refer to those page numbers.

(1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). Mere allegations or denials do not defeat a moving party's allegations. *Id.; Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir.1994). Instead, the party opposing summary judgment must present "significant probative evidence" supporting its allegations. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir.2007). The court may not make credibility determinations. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. When there are cross-motions for summary judgment, the court must determine the merits of each motion and resolve all reasonable inferences against the moving party. *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir.2001).

## DISCUSSION

Although the primary issue presented by the cross-motions for summary judgment is whether U.G.'s insurance policy with Valley Forge covers the judgment in the underlying litigation, there are three issues the court must resolve: (1) whether Valley Forge waived its coverage defenses by means of its conduct in the underlying litigation; if no, (2) whether the judgment in the underlying litigation is covered under the policy; and, if yes (3) whether the policy also covers any attorneys' fees awarded to APL against U.G. in the underlying litigation. The court addresses each in turn.

## I. *Waiver*

█ As a threshold matter, the court must determine whether, as APL asserts, Valley Forge waived its right to contest coverage in this matter. APL raised a similar argument in its earlier motion for summary judgment in this action. There, APL requested that Valley Forge be judicially estopped from denying coverage because, when it moved to intervene in the underlying litigation, it failed to inform APL and the court that it was defending U.G. and Kamdar pursuant to a reservation of rights. The court rejected the judicial estoppel argument, holding that "because the reservation-of-rights issue was entirely irrelevant to the motion to intervene ..., the court never 'adopted' Valley Forge's position," a necessary precondition for judicial estoppel. *APL Co. Pte. Ltd. v. Valley Forge Ins. Co.*, No. C 09–05641 MHP, 2010 WL 1340373, at *5 (N.D.Cal. Apr. 2, 2010) (Patel, J.).

In its reply brief to the earlier motion for summary judgment, APL raised an additional reason for precluding Valley Forge from asserting a coverage defense: Valley Forge had failed to comply with the reservation-of-rights procedures detailed in *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*, 136 Cal. App.4th 212, 39 Cal.Rptr.3d 33 (2006). *Kaufman & Broad* explains that "where the insured [like U.G.] is unable to assert its rights, an insurer who seeks to intervene and protect its coverage defenses may provide an explicit reservation of rights to its client and *allege that reservation of rights within its pleading to put the plaintiff on notice that the insurance company is reserving those rights and asserting coverage defenses.* Thus, the insurance company may avoid any claim it intentionally waived its reservation of rights." *Id.* at 223, 39 Cal.Rptr.3d 33 (emphasis added). APL claimed that Valley

Forge had not alleged its reservation of rights in its complaint in intervention, and had thereby waived its right to later disclaim coverage. The court acknowledged that APL's argument "may possess some merit," but refused to address it because it had been raised for the first time in reply. *APL*, 2010 WL 1340373, at *5.

In its instant motion for summary judgment, APL now properly asserts that Valley Forge has waived its right to deny coverage, again relying on the language from *Kaufman & Broad*. The facts relevant to the issue are largely undisputed. In 2005 and then again in 2007, Valley Forge sent letters to U.G. and Kamdar informing and then reiterating that it was defending those entities pursuant to a reservation of rights. In its motion to intervene, Valley Forge did not state that it was defending its insureds pursuant to a reservation of rights. By April 8, 2008 at the latest, when APL's attorneys received the four different letters that Valley Forge had sent to U.G. and Kamdar, APL was on notice that Valley Forge was defending U.G. and Kamdar pursuant to a reservation of rights. APL, relying exclusively on the language in *Kaufman & Broad* related to including a reservation of rights in a complaint in intervention, contends that through this course of conduct, Valley Forge waived its right to disclaim coverage.

■ Notwithstanding the court's earlier supposition that APL's waiver argument "may posses some merit," Valley Forge has not waived its coverage defense. "In the insurance context, California courts have applied the general rule that waiver requires the insurer to intentionally relinquish its right to deny coverage. . . ." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1188, 96 Cal.Rptr.2d 136

(2000). With the exception of *Kaufman & Broad*, all of the cases that address waiver of an insurer's coverage defense for failure to properly preserve a reservation of rights focus solely upon the conduct of the insurer vis-a-vis the insured. *See Garamendi v. Golden Eagle Ins. Co.*, 116 Cal. App.4th 694, 720, 10 Cal.Rptr.3d 724 (2004) (holding that waiver only occurs where "the insurer either intentionally relinquished a known right, or acted in such manner as to cause the insured reasonably to believe *the insurer* had relinquished such right, and that the insured relied upon such conduct to his detriment") (emphasis added); *Ringler*, 80 Cal.App.4th at 1189, 96 Cal.Rptr.2d 136. Accordingly, failure of the insurer to provide notice to the insured of a reservation of rights can result in waiver of the right to later disclaim coverage. *See Garamendi*, 116 Cal. App.4th at 719, 10 Cal.Rptr.3d 724; *Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739, 755–56, 161 Cal.Rptr. 322 (1980).[3] But other than *Kaufman & Broad*, no California court has ever held that an insurer's conduct *vis-a-vis* a third-party judgment creditor could result in the insurer's waiver of its coverage defenses.

Moreover, it is entirely unclear where the *Kaufman & Broad* court locates the duty of an insurer to include a reservation of rights in a complaint-in-intervention. The *Kaufman & Broad* court cites to *Garamendi* for the proposition that "[a]dequate reservation of rights bars claim of waiver of coverage defense." *Kaufman & Broad*, 136 Cal.App.4th at 223, 39 Cal. Rptr.3d 33. The relevant passage of *Garamendi*, however, discusses only whether or not the insurer's conduct conveyed an intent to the insured that the insurer disclaimed any coverage defenses. In addi-

---

**3.** It should be noted, however, that there is no "waiver if the insurer made a reservation of rights at any time, even if years after the defense was undertaken." *Garamendi*, 116 Cal.App.4th at 721, 10 Cal.Rptr.3d 724.

tion, the passage of *Kaufman & Broad* upon which APL relies is, at best, dicta. In that case, the Court of Appeal was tasked with determining whether "an insurance company seek[ing] to provide a defense in pending litigation for a corporation that has been suspended for nonpayment of its taxes ... must intervene in the action to protect its own interests and those of its insured," or whether the insurance company may "answer and litigate the lawsuit in the name of the suspended corporation without intervening in the case." *Id.* at 216, 39 Cal.Rptr.3d 33. The court, after examining California Revenue and Taxation Code sections 19719 and 23301, held that intervention was necessary. *Id.* at 222, 39 Cal.Rptr.3d 33. The reservation-of-rights quotation upon which APL so heavily relies was not directly germane, in any way, to the resolution of the sole issue on appeal.

Given (1) that there is no dispute that Valley Forge adequately placed its insureds on notice that it was reserving its right to assert a coverage defense and (2) that no California court has ever held that an insurer's conduct toward a third-party judgment creditor can result in the insurer's waiver of a coverage defense, the court holds that Valley Forge did not waive its coverage defense by failing to provide APL with notice of its reservation of rights at the time Valley Forge intervened in the underlying litigation.

## II. *Coverage*

■ Having resolved the threshold issue, the court turns to the merits of Valley Forge's coverage defense. APL brought this action under section 11580 to the California Insurance Code, which provides that "whenever judgment is secured against the insured ... in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." Cal. Ins.Code § 11580(b)(2). To recover a judgment under section 11580, a plaintiff must prove that:

1) it obtained a judgment for bodily injury, death, or property damage,

2) the judgment was against a person insured under a policy that insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal,

3) the liability insurance policy was issued by the defendant insurer,

4) the policy covers the relief awarded in the judgment,

5) the policy either contains a clause that authorizes the claimant to bring an action directly against the insurer or the policy was issued or delivered in California and insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal.

*Wright v. Fireman's Fund Ins. Cos.*, 11 Cal.App.4th 998, 1015, 14 Cal.Rptr.2d 588(1992). The only element at issue in the instant litigation is the fourth: whether "the policy covers the relief awarded in the judgment."

The Valley Forge insurance policy issued to UG provides insurance coverage, subject to all of its terms, conditions and limits, for "[t]hose sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury'...." Insurance Documents at 68. The definition of "property damage" includes "physical injury to tangible property, including all resulting loss of use of that property." *Id.* at 79. The policy, however, contains a number of exclusions, including a "Contractual Liability" exclusion. That exclusion provides that the policy does not apply to "contractual liability,

'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of assumption of liability in a contract or agreement.'" *Id.* at 70. Both parties agree that clause 9 of the bill of lading, the clause at issue here, is a contractual liability provision.

Such a conclusion does not, however, end the inquiry, as the insurance policy includes an "Insured Contract" exception to the "Contractual Liability" exclusion. That exception provides that the policy will cover "damages ... assumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement." *Id.* An "Insured Contract" is defined as:

> [t]hat part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*Id.* at 78. The parties hotly dispute whether clause 9 of the bill of lading is an "insured contract."

■ As a general matter, "[i]nsurance policy exclusions are construed narrowly, while exceptions to those exclusions are construed broadly in favor of the insured." *General Casualty Ins. v. Worker's Comp. App. Bd.*, 131 Cal.App.4th 345, 372, 31 Cal.Rptr.3d 740 (2005) (citing *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal.4th 465, 476, 9 Cal.Rptr.3d 701, 84 P.3d 385 (2004)). Furthermore, "courts should construe 'insured contract' provisions broadly, in favor of coverage." *Golden Eagle Ins. Co. v. Ins. Co. of the West*, 99 Cal.App.4th 837, 851, 121 Cal.Rptr.2d 682 (2002). In California, the party asserting coverage has the burden of establishing that an exception to an exclusion applies. *Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 1194, 77 Cal.Rptr.2d 537, 959 P.2d 1213 (1998).

Clause 9 meets the definition of "insured contract" contained in the insurance policy. To begin with, though the word "tort" does not appear anywhere in clause 9, the clause, by its very nature, addresses only tort liability. Clause 9 provides that the merchants to the bill of lading, which pursuant to the underlying litigation includes U.G., Kamdar and UKA, will indemnify APL "against any loss, damage, liability or expense incurred by [APL], if such loss, damage, liability or expense has been caused by ... the manner in which the Container has been filled, packed, stuffed or loaded....." Although the issue was never explicitly decided in the underlying litigation[4], liability under clause 9 against any of the merchants could only be triggered by tortious conduct. The court cannot conceive of and Valley Forge has not suggested any way in which APL could be damaged by the "manner in which the Container has been filled, packed, stuffed or loaded" without the container having been "filled, packed, stuffed or loaded" in a tortious manner.

---

4. The lack of a judicial decision regarding any tortious conduct engaged in by UKA is the product of the peculiar procedural posture of this case. UKA never appeared in the action, and in May 2006, the Clerk of the Court entered default against UKA. However, APL never sought a default judgment against UKA. Instead, judgment was entered against UKA pursuant to the stipulated amended judgment agreed to by APL, U.G. and Kamdar. Obviously, because UKA had never appeared in the action, UKA could not stipulate to anything, including the amended judgment. The practical result, however, of this procedural history is that the basis for UKA's liability was never officially established. However, UKA's tort liability has been assumed throughout the litigation by the parties (as evidenced by their litigation positions), this court and the Ninth Circuit.

This conclusion is consistent with the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1304(3) [5], which mandates that a shipper, in this case UKA, "shall not be responsible for loss or damage sustained by the carrier or the ship arising or resulting from any cause without the act, fault, or neglect of the shipper, his agents, or his servants." Any interpretation of clause 9 that permitted liability against UKA in the absence of tortious conduct would therefore run afoul of COGSA. This reading of the bill of lading is also in accord with this court's and the Ninth Circuit's holdings in the underlying litigation. In the order granting summary judgment for APL on its contract claims, the court wrote that "APL provided sufficient evidence . . . to show that the packing was the cause of the leaking and the resulting damage." *APL*, 2007 WL 607902, at *5. The court also held that there was "no evidence . . . to suggest that APL was negligent in handling the Goods." *Id.* The Ninth Circuit was even more explicit, holding that "in order for liability under Clause 9 to set in, a person or entity other than the carrier (most likely the shipper) must have acted negligently or packed the container in a manner that would cause damage." *APL*, 582 F.3d at 954.[6] Accordingly, because clause 9 only addresses tortious conduct, clause 9 does not, as U.G. and Kamdar suggest, merely make U.G. and Kamdar "jointly and severally liable to pay liability *created*

*by the contract itself.*" Docket No. 48 (Defs.' Opp'n) at 11. Rather, clause 9 contractually dictates who is liable for a specific type of tortious conduct—the filling, packing, stuffing or loading of a shipper-packed container that causes damage to APL.

That clause 9 can only be triggered by tortious conduct is critical. An "insured contract" must address tort liability, which is defined in the policy as "a liability that would be imposed by law in the absence of any contract or agreement." If non-tortious conduct, i.e., conduct that merely breached a purely contractual provision of the bill of lading (for example, a failure of a party to pay APL for carriage) could implicate clause 9, then clause 9 could not be an "insured contract" provision because it would relate only to "liability that would [*not*] be imposed by law in the absence of a contract or agreement." Under COGSA, however, UKA as the shipper could be liable to APL, the carrier, in the absence of a contractual provision like clause 9, for any damage suffered by the shipper as a result of UKA's negligence. *See, e.g., Senator Linie GMBH & Co. KG v. Sunway Line, Inc.*, 291 F.3d 145, 155 (2d Cir.2002) (recognizing, under 46 U.S.C. section 1304(3), that a carrier has a cause of action against a shipper for damage caused by the shipper's negligence);.

Clause 9 also satisfies the other requirement of an "insured contract": through

**5.** COGSA is now included as a note to 46 U.S.C. § 30701. The court cites the pre–2006 section numbers of COGSA as they appeared in the appendix to Title 46 of the United States Code.

**6.** The court also notes that before this court and in the Ninth Circuit, U.G. and Kamdar, who were represented by the same counsel who now represents Valley Forge, argued that UKA had acted tortiously. As the Ninth Circuit explained, "U.G. and Kamdar argue, however, that they are also 'shippers' entitled to the protection of section 1304(3) of COG-

SA. Therefore, U.G. and Kamdar contend that they are not obligated to indemnify APL for expenses related to the clean-up of the leaked materials because the leak did not result from their own acts, fault or neglect; rather the leak was the result of UK Aerosol's negligent packing." *APL*, 582 F.3d at 952. That U.G. and Kamdar raised an argument that hinged on a finding of tortious conduct by UKA indicates that U.G., Kamdar and their counsel provided by Valley Forge, understood clause 9 only to impose liability if at least one of the merchants had acted tortiously.

the indemnification provision, certain parties, namely merchants with no control over the packing of a container being ferried by the carrier, assume the tort liability of another entity, namely the entity that packed the container, in this case the shipper, UKA. In the absence of clause 9, no one other than the shipper could possibly be liable for any torts committed by the shipper in the process of packing the container. Yet clause 9 requires all entities that meet the bill of lading's broad definition of merchant to indemnify APL for any containers packed in a tortious manner by the shipper.

To be certain, clause 9 is different from a prototypical "insured contract" in which one party's tort liability to a third-party is shifted, in its entirety, to another party. *See Ins. Co. of the West,* 99 Cal.App.4th at 842–43, 121 Cal.Rptr.2d 682 (describing an "insured contract" provision in which a subcontractor indemnified a contractor for all property damage caused in the performance of the subcontract). The indemnity described in clause 9 runs from APL to all of the merchants, rather than from UKA to U.G. and Kamdar as it would in a

more typical "insured contract"; under clause 9, UKA is still jointly and severally liable, along with U.G. and Kamdar, to APL for any damage caused by the manner in which a container was packed. Nonetheless, clause 9 meets the policy's definition of an "insured contract" because it is a contractual provision by which U.G. and Kamdar "assume[d] the tort liability of [UKA] to [APL]." Nothing in the "Insured Contract" exception requires that the liability be "assume[d]" in full; and, absent clause 9, U.G. and Kamdar could not possibly be held liable, under any circumstances, for any tortious damage caused by the manner in which the container was packed. Given California's stated policies of reading insurance exclusions narrowly and exceptions to an exclusion (especially "insured contract" exceptions) broadly in favor of coverage, clause 9 is an "insured contract." [7]

Because clause 9 is an "insured contract," the bill of lading falls within the "Insured Contract" exception to the "Contractual Liability" exclusion of the insurance policy. Accordingly, the judgment in the underlying litigation is covered by the policy, meaning Valley Forge is obligated,

---

7. At the hearing on this motion, Valley Forge argued vociferously that the liability that U.G. and Kamdar assumed was contractual, as opposed to tortious, in nature. The court rejects this argument for the reasons discussed above. The court notes, in addition, that while advocating for its position, Valley Forge repeatedly miscited to this court's 2007 memorandum and order granting APL's motion for summary judgment in the underlying litigation. Valley Forge quoted, in open court, the following sentence from the opinion: "Breach of Clause 9 is premised upon UG's and Kamdar's failure to properly secure the goods...." *APL,* 2007 WL 607902, at *2. Valley Forge suggested that the sentence established that U.G. and Kamdar's assumed liability was contractual. Read in context, however, it is clear that the above-quoted sentence constituted the court's description of APL's position in the underlying litigation

and did not represent the court's holding regarding the basis for liability against U.G. and Kamdar. The relevant portion of the paragraph is as follows:

> APL argues that UG and Kamdar are bound by the Bill of Lading and that UG and Kamdar breached Clause 9 and Clause 19 of its terms. Breach of Clause 9 is premised upon UG's and Kamdar's failure to properly secure the goods, while breach of Clause 19 is premised upon the UG's and Kamdar's failure to pack the goods so as to withstand the risk of carriage.

*Id.* Whether or not Valley Forge's gross mischaracterization of the of the court's prior order was intentional or negligent, Valley Forge would be well-served to avoid arguing for its position by taking quotations from the court's own orders out-of-context. The court is not likely to find such advocacy persuasive.

pursuant to its policy with U.G., to pay the judgment to APL.

### III. *Attorneys' Fees*

██ The court must resolve one last issue: whether U.G.'s policy with Valley Forge also obligates Valley Forge to pay the attorneys' fees awarded to APL in the underlying litigation.[8] APL argues that attorneys' fees are included in the general coverage of the policy; in response, Valley Forge conclusorily asserts that the policy does not cover attorneys' fees. As is discussed above, the policy provides that Valley Forge will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury'...." Insurance Documents at 68. APL contends that "damages" includes attorneys' fees. Although the term "property damages" is defined in the policy, the word "damages," standing alone, is not. Where a policy does not define the word "damages," "for interpretation purposes [a court] look[s] to its 'ordinary and popular' definition." *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 825, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990). In California, the ordinary definition of "damages" is "compensation, in money, recovered by a party for loss or detriment it has suffered through the acts of another." *Id.* at 826, 274 Cal.Rptr. 820, 799 P.2d 1253 (quotations marks and footnotes omitted). Within that definition, the term compensation is not construed "in its technical legal sense," but "encompass[es] any remunerative payment made to an aggrieved party,"

including "restitutive and punitive measures." *Id.* at 826 n. 11, 274 Cal.Rptr. 820, 799 P.2d 1253. Given that definition of "damages," the attorneys' fees awarded in the underlying litigation falls plainly within the coverage of the policy. The fee award in the underlying litigation is "a remunerative payment made to an aggrieved party." The court also notes, that pursuant to the "English Rule" that the court applied in the underlying action to award fees to APL and under which the losing party pays the prevailing party's costs and fees, attorneys' fees are considered "an element of damages." *See Caffrey v. Dep't of Liquor Control for Montgomery, Cnty.,* 370 Md. 272, 280, 805 A.2d 268 (2002); *see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 250, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (discussing how under the English Rule, which was rejected by U.S. courts, attorneys' fees were included as damages). Accordingly, the court holds that the insurance policy covers the attorneys' fees awarded in the underlying action in addition to the judgment.[9]

### CONCLUSION

For the aforementioned reasons, plaintiff APL's motion for summary judgment is GRANTED, and defendant Valley Forge's motion for summary judgment is DENIED.

IT IS SO ORDERED.

---

**8.** On September 3, 2010, this court entered an order in the underlying litigation that APL was entitled to attorneys' fees. Because APL had heavily redacted its billing records, the court did not, however, set the value of those fees; to ensure that the fee award would be reasonable, the court provided APL with an opportunity to submit unredacted billing records for *in camera* review. Although the exact amount of fees has yet to be determined,

APL will ultimately be entitled to some attorneys' fees in the underlying litigation.

**9.** Because the court holds that the general policy language covers the attorneys' fees at issue in the underlying litigation, the court need not address APL's argument that section A(1)(e)(5) of the policy also requires that Valley Forge pay the fee award.