[No. C043764. Third Dist. Aug. 30, 2004.]

WILLIAM PROUTY et al., Plaintiffs and Appellants, v.
GORES TECHNOLOGY GROUP et al., Defendants and Respondents.

1226

---

COUNSEL

Cannata & Feldman and Aaron R. Feldman for Plaintiffs and Appellants.

Quinn Emanuel Urquhart Oliver & Hedges, Jon Robert Steiger and Scott G. Lawson for Defendants and Respondents.

OPINION

**NICHOLSON, J.**—A new parent company terminated plaintiff employees upon its purchasing their employer. The employees sued, claiming the parent company violated the terms of its purchase contract with the prior parent company regarding termination of employees and severance pay. The trial court granted summary judgment against the employees, concluding they were not third party beneficiaries who could recover under the contract. We disagree and reverse.

## FACTS

In April 2001, defendant Gores Technology Group (GTG) entered into a stock purchase agreement by which GTG agreed to purchase from Hewlett-Packard Company all of the capital stock of VeriFone, Inc. Among various matters, the parties agreed in section 5.7 of the agreement that GTG would offer employment to all VeriFone employees with salaries and benefits similar to those the employees received at VeriFone, except GTG had no duty to continue any severance obligation Hewlett-Packard had provided them other than as required by law. GTG agreed to indemnify Hewlett-Packard for any costs or expenses incurred as a result of terminating an employee after the closing on the stock sale purchase.

Regarding third party beneficiaries, section 10.5 of the stock sale agreement stated the agreement is "not intended to confer upon any Person other than the parties hereto, the Company [VeriFone], [and other entities not relevant here] any rights or remedies hereunder."[1]

On July 19, 2001, Hewlett-Packard and GTG entered into amendment No. 1 to the stock sale agreement. In section 6 of the amendment, GTG agreed not to terminate any VeriFone employees during the first 60 days after closing the stock sale. GTG also agreed if it terminated any VeriFone employees during the first 90 days after the 60-day prohibition period, it would pay such employees severance benefits "that are approximately equivalent to the cash compensation element of [Hewlett-Packard's] unassigned

---

[1] Section 10.5 reads in full: "This Agreement, the exhibits and schedules hereto, the Surviving Intercompany Contracts and the Confidentiality Agreement (a) constitute the entire agreement and supersede all other prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and (b) are not intended to confer upon any Person other than the parties hereto, the Company, the Company Subsidiaries, the Purchaser Indemnified Persons and the Seller Indemnified Persons any rights or remedies hereunder."

pool benefits for [Hewlett-Packard's] U.S. employees which the parties agree shall be no less than six months base salary (the 'Equivalent Severance Policy')."[2]

In amending section 5.7 of the original agreement regarding employees and employee benefits, GTG further agreed to indemnify Hewlett-Packard against any cost, expense, loss or liability "including interest and penalties *recovered by a third party with respect thereto*," and which arise out of GTG's termination of an employee after the closing, "including, without limitation, . . . any breach by [GTG] of any of the matters set forth in Section 5 [*sic*] of the Amendment to the Agreement." (Italics added.) Because section 5 of the amendment imposes no obligation on GTG and does not concern employees at all, the reference in this amendment to section 5 is an obvious typographical mistake, and the reference should be to section 6 of the amendment.

Also, in section 8(b) of the amendment, the parties ratified certain agreements not relevant here as continuing obligations that would survive closing. To implement this provision, the parties expressly waived the operation of section 10.5 of the stock sale agreement as to those agreements "but as to no other matters."

At the time GTG and Hewlett-Packard entered into the stock sale agreement and its amendment, the cash component of Hewlett-Packard's severance policy differed depending on whether the terminated employee signed a legal release. If the employee signed the release, severance consisted in primary part of a minimum six months' salary plus additional salary based on length of service up to a maximum of 12 months' salary, plus payment for other calendar events. If the terminated employee refused to sign a release, the employee received two months' salary in lieu of notice of termination, along with other incidental payments.

Plaintiffs William Prouty, Paul Warenycia, Russ Carlson, and Eric Lecesne were Hewlett-Packard employees assigned to the VeriFone Division at the

---

[2] The pertinent portions of the amendment's section 6 read as follows: "(a) Purchaser [GTG] agrees that neither Purchaser nor the Company [VeriFone] nor any Company Subsidiary will terminate any U.S. employees of the Company or its affiliates (the 'U.S. VeriFone Employees') during the first sixty (60) days after Closing.

"(b) Purchaser agrees that the Equivalent-Severance Policy (as defined below) for U.S. VeriFone Employees that it would otherwise apply in the first ninety (90) days of its ownership of the Company will instead apply in the ninety (90) days beginning sixty-one (61) days after the Closing. In other words, if Purchaser concludes that it will terminate any U.S. VeriFone Employees at any time through one hundred fifty (150) days after Closing, any U.S. VeriFone Employees who are notified within that time that they will lose their jobs will receive severance benefits from Purchaser or the Company or a Company Subsidiary that are approximately equivalent to the cash compensation element of the Seller's [Hewlett-Packard's] unassigned pool benefits for the Seller's U.S. employees which the parties agree shall be no less than six months base salary (the 'Equivalent Severance Policy')."

time GTG purchased VeriFone. Each had worked for Hewlett-Packard for more than 20 years. GTG terminated plaintiffs' employment within one week of closing its acquisition of VeriFone.

When GTG officials informed plaintiffs of their termination, they offered plaintiffs two months' salary in lieu of notice, and told them they did not need to report to work any longer unless called back. They were free to look for other employment. GTG also offered an additional four months' salary if plaintiffs agreed to sign a release. Plaintiffs did not accept the offer, and they each received the two months' salary. Plaintiff's allege had GTG complied with the contract, they would have received an additional two months' pay for the time the contract prohibited GTG from terminating them. They also allege GTG was obligated to offer them up to 12 months' severance plus other payments, as Hewlett-Packard would have offered them had it terminated plaintiffs.

## PROCEDURAL HISTORY

In March 2002, plaintiffs filed this action against VeriFone, Hewlett-Packard, GTG and GTG's chairman, Alec Gores, seeking declaratory relief and damages for breach of contract. (We refer to GTG and Alec Gores collectively as GTG.) Plaintiffs later dismissed the action against Hewlett-Packard.

In December 2002, the remaining defendants filed motions for summary judgment. GTG's moving papers did not include a separate statement of undisputed facts, but instead relied upon the statement prepared by VeriFone. VeriFone's separate statement was served on plaintiffs, but it was not stamped as having been filed with the court. (The document, however, appears in the clerk's transcript, about which the clerk declared was a true and correct copy of all the documents that appeared "on record and on file" in the clerk's office in this matter.)

Plaintiffs settled with VeriFone prior to the hearing on the motions, and VeriFone's motion was dropped. On the same day plaintiffs filed their opposition to GTG's motion, GTG filed a supplemental statement adopting VeriFone's separate statement as its own and filing it with the court. This filing occurred on December 24, 2002, 14 days before the scheduled hearing.

GTG argued summary judgment was required because plaintiffs were not parties to the stock sale agreement and the amendment, and they were foreclosed by the agreement's terms from being third party beneficiaries. Plaintiffs opposed in part by asserting GTG's motion was defective due to its failure to file a separate statement. They also claimed they were intended

third party beneficiaries who could recover for GTG's alleged breach of section 6 of the amendment.

By ruling dated January 8, 2003, the trial court granted GTG's motion for summary judgment. The court concluded the undisputed facts demonstrated plaintiffs were not parties or third party beneficiaries to the agreement and the amendment. "The express language of the contract," the court wrote, "provides that there are no third party beneficiaries, and Plaintiffs have failed to demonstrate that the contract was made expressly for the benefit of the third person. [Citation.]" The court also concluded GTG's motion was not defective for failing to file a separate statement with its moving papers. GTG satisfied the statutory purpose behind the requirement to file a separate statement by adopting VeriFone's statement.

Before us, plaintiffs claim the trial court erred because (1) GTG's motion was defective due to its failure to file a separate statement; and (2) plaintiffs were intended third party beneficiaries of the amended agreement.

## DISCUSSION

### I

### *Standard of Review*

"Under summary judgment law, any party to an action, whether plaintiff or defendant, 'may move' the court 'for summary judgment' in his favor on a cause of action (i.e., claim) or defense (Code Civ. Proc., § 437c, subd. (a))—a plaintiff 'contend[ing] . . . that there is no defense to the action,' a defendant 'contend[ing] that the action has no merit' (*ibid.*). The court must 'grant[]' the 'motion' 'if all the papers submitted show' that 'there is no triable issue as to any material fact' (*id.*, § 437c, subd. (c))—that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations]—and that the 'moving party is entitled to a judgment as a matter of law' (Code Civ. Proc., § 437c, subd. (c)). The moving party must 'support[]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' (*Id.*, § 437c, subd. (b).) Likewise, any adverse party may oppose the motion, and, 'where appropriate,' must present evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' (*Ibid.*) An adverse party who chooses to oppose the motion must be allowed a reasonable opportunity to do so. (*Id.*, § 437c, subd. (h).) In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom (*id.*, § 437c, subd. (c)), and must

view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party. [¶] . . . [¶]

"[I]n moving for summary judgment, a 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' (Code Civ. Proc., § 437c, subd. (o)(2).) [¶] . . . [¶]

"There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [¶] . . . [¶]

"Thus, if a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would *require* a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment *as a matter of law*, but would have to present his evidence to a trier of fact. By contrast, if a defendant moves for summary judgment against such a plaintiff, he must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not—otherwise, *he* would not be entitled to judgment as a matter of law, but would have to present *his* evidence to a trier of fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843, 849, 850, 851 [107 Cal.Rptr.2d 841, 24 P.3d 493], italics in original, fns. omitted.)

"On appeal, we review the record de novo to determine whether the moving party met its burden of proof." (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116 [113 Cal.Rptr.2d 90].) We consider " 'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [noncontradicted] inferences reasonably deducible from the evidence.' " (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].)

## II

### *Third Party Beneficiaries*

GTG argues the express language of section 10.5 of the agreement and section 8(b) of the amendment preclude plaintiffs from being third party beneficiaries. Plaintiffs argue that despite sections 10.5 and 8(b), GTG and Hewlett-Packard adopted section 6 of the amendment with the express intent to benefit plaintiffs, thus making them third party beneficiaries who could enforce the agreement. Plaintiffs' argument provides the favored interpretation.

"Where one person for a valuable consideration engages with another to do some act for the benefit of a third person, and the agreement thus made has not been rescinded, the party for whose benefit the contract or promise was made, or who would enjoy the benefit of the act, may maintain an action against the promisor for the breach of his engagement. While the contract remains unrescinded, the relations of the parties are the same as though the promise had been made directly to the third party. Although the party for whose benefit the promise was made was not cognizant of it when made, it is, if adopted by him, deemed to have been made to him. He may sue on the promise. . . . The action by a third party beneficiary for the breach of the promisor's engagement does not rest on the ground of any actual or supposed relationship between the parties but on the broad and more satisfactory basis that the law, operating on the acts of the parties, creates the duty, establishes a privity, and implies the promise and obligation on which the action is founded. [Citation.]

"It is not necessary that the beneficiary be named and identified as an individual; a third party may enforce a contract if he can show he is a member of a class for whose benefit it was made. . . .

"The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. [Citation.] If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The parties are presumed to intend the consequences of a performance of the contract." (*Johnson v. Holmes Tuttle Lincoln-Mercury, Inc.* (1958) 160 Cal.App.2d 290, 296–297 [325 P.2d 193].)

This rule is codified: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." (Civ. Code, § 1559.) "The word 'expressly,' by judicial interpretation, has

now come to mean merely the negative of 'incidentally.' " (*Gilbert Financial Corp. v. Steelform Contracting Co.* (1978) 82 Cal.App.3d 65, 70 [145 Cal.Rptr. 448].) Also, the contract need not be exclusively for the benefit of the third party. He does not need to be the sole or the primary beneficiary. (*Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1064 [95 Cal.Rptr.2d 864].)

In contrast, "[a] third party who is only incidentally benefited by performance of a contract is not entitled to enforce it. [Citation.] ' "The fact that he is incidentally named in the contract, or that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to demand its fulfillment. It must appear to have been the intention of *the parties* to secure to him personally the benefit of its provisions." ' [Citation.] Whether the third party is an intended beneficiary or merely an incidental beneficiary involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered." (*Eastern Aviation Group, Inc. v. Airborne Express, Inc.* (1992) 6 Cal.App.4th 1448, 1452 [8 Cal.Rptr.2d 355], italics in original.)

■ Generally, it is a question of fact whether a particular third person is an intended beneficiary of a contract. (*Bancomer, S. A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1458 [52 Cal.Rptr.2d 435].) However, where, as here, the issue can be answered by interpreting the contract as a whole and doing so in light of the uncontradicted evidence of the circumstances and negotiations of the parties in making the contract, the issue becomes one of law that we resolve independently.

■ Applying the law of third party beneficiaries to the language of the contract discloses GTG and Hewlett-Packard expressly intended to grant plaintiffs the promises contained in section 6 of the amendment. Indeed, section 6 is a classic third party provision. It is patently intended to preclude early termination of the affected employees and to provide those terminated soon after the closing with severance benefits similar to what they would have received had they been terminated when employed by Hewlett-Packard. The provision expressly benefits them, and only them.

Other portions of the contract and amendment disclose this intent. Previously, the parties agreed GTG would not provide any voluntary severance benefits to Hewlett-Packard employees it eventually terminated. However, section 6 of the amendment superseded the original agreement. Moreover, in agreeing not to terminate employees and to pay them similar severance benefits, GTG agreed to extend its indemnity obligations towards Hewlett-Packard to include any breaches on the new promise. It is difficult for GTG to argue section 6 did not intend to benefit plaintiffs when GTG gained nothing from agreeing to its terms.

The uncontradicted facts of the amendment's negotiation also disclose Hewlett-Packard and GTG intended to benefit plaintiffs. David Prindiville, testifying on behalf of Hewlett-Packard, stated Hewlett-Packard entered this transaction with the intent its VeriFone employees who became GTG employees would have the same or similar type of severance package as they would with Hewlett-Packard. Prindiville claimed Hewlett-Packard learned GTG would lay off many employees after the closing. It was concerned about that, and very concerned those laid off would not be treated the same as Hewlett-Packard would have treated them. Prindiville explained Hewlett-Packard's severance policy to his company's negotiators on the deal, and they took this information to GTG.

Catherine Scanlon, GTG's chief financial officer, did not contradict Prindiville's claims. Scanlon testified GTG contemplated laying off VeriFone employees before the parties signed the stock sale agreement in April 2001. On July 19, 2001, Hewlett-Packard representatives met with her and others and presented them with the amendment to the sale agreement, including section 6 regarding severance benefits. The Hewlett-Packard team stated the amendment contained the terms on which they were willing to execute the transaction. They stated they were "not prepared" to negotiate the terms, but if GTG agreed to the terms, the parties could sign the closing documents that day. It was Scanlon's understanding there would be no further negotiations on the amendment. GTG personnel reviewed the amendment for about one hour, then signed the documents, closing the deal.

It is thus clear Hewlett-Packard expressly intended to protect plaintiffs against immediate termination and loss of severance benefits. It is also clear GTG agreed to this intention, even to the point of indemnifying Hewlett-Packard against GTG's breach of this promise. The language of the contract and the facts surrounding its negotiation demonstrate the parties expressly intended plaintiffs to be third party beneficiaries.

GTG disagrees with our conclusion, asserting section 10.5 precludes plaintiffs from becoming third party beneficiaries. They also rely on section 8(b) of the amendment as proof the parties knew who they intended to exclude from section 10.5, and plaintiffs' absence from that list allegedly demonstrates the parties did not intend to except plaintiffs from section 10.5's preclusion of third party beneficiaries. This argument, however, sidesteps the core issue. If GTG and Hewlett-Packard had not wanted to benefit plaintiffs, they would not have written section 6, nor would they have amended section 5.7 of the agreement to indemnify Hewlett-Packard from GTG's breach of section 6.

■ Section 6 of the amendment does conflict with section 10.5 of the stock purchase agreement, and as incorporated into the amendment by section 8(b)

of the amendment. Under rules of contract construction, however, the mere existence of sections 10.5 and 8(b) does not end this matter. The latter two provisions cannot be harmonized with section 6. Sections 10.5 and 8(b) state generally no rights or remedies exist under the contract to third persons; section 6 expressly grants rights to specific third persons regarding their employment with GTG. In this circumstance, under well established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is par amount to the general provision. (Code Civ. Proc., § 1859; Civ. Code, § 3534; *National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 386 [131 Cal.Rptr. 42, 551 P.2d 362]; see *Metzler v. Thye* (1912) 163 Cal. 95, 99 [124 P. 721]; *Comunale v. Traders & General Ins. Co.* (1953) 116 Cal.App.2d 198, 201 [253 P.2d 495].) Section 6 of the amendment thus is an exception to section 10.5 of the original contract and section 8(b) of the amendment, and plaintiffs can enforce it.

This interpretation is also consistent with governing state policy. "In choosing among the reasonable meanings of a promise or agreement or a term thereof, a meaning that serves the public interest is generally preferred." (Rest.2d Contracts, § 207, p. 106.) Here, public policy is succinctly expressed by Civil Code section 1559: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Barring plaintiffs from enforcing section 6 despite its clear intent to benefit them would contravene the statutory policy of granting a remedy to those expressly benefited as third party beneficiaries, and would render section 6 of the amendment a nullity.

Cases cited by GTG are not to the contrary. *Eastern Aviation Group, Inc. v. Airborne Express, Inc., supra,* 6 Cal.App.4th 1448, concerned a contract for the purchase of aircraft noise reduction systems. The contract called for the buyer to make payments into a joint account held by the seller and an investor in seller's products. The investor was not a party to the contract. When the buyer paid the seller directly, the investor sued the buyer for breach of contract, claiming it was a third party beneficiary to the purchase and sale contract by means of the clause requiring payment into the joint account. (*Id.* at p. 1452.)

The Court of Appeal disagreed, holding the investor only incidentally benefited from the contract. The contract was a simple sales agreement by which the buyer promised to pay the seller. Such a buyer is not concerned with how the seller dispenses with the proceeds. The court determined the contract's requirement to pay into the joint account was only to accommodate the seller, not to accommodate the seller's creditors in order to obtain the seller's performance. (*Eastern Aviation Group, Inc. v. Airborne Express, Inc., supra,* 6 Cal.App.4th at pp. 1452–1453.)

Unlike the contract in *Eastern Aviation Group*, section 6 of the amendment expressly, not incidentally, benefits plaintiffs. The requirement not to terminate plaintiffs and to pay them the Hewlett-Packard severance was not to benefit either GTG or Hewlett-Packard. Rather, it benefited only plaintiffs. *Eastern Aviation Group* does not address this situation.

Neither does *East Bay Mun. Utility Dist. v. Richmond Redevelopment Agency* (1979) 93 Cal.App.3d 346 [155 Cal.Rptr. 636] (*East Bay*) provide us any guidance. In that case, a public utility was required to relocate certain underground facilities after a city, in furtherance of a redevelopment project, vacated the streets under which the facilities existed. The city's redevelopment agency had entered into a loan contract with the United States Department of Housing and Urban Development to secure federal funding for the redevelopment project, but the agency failed to include in the contract the cost of relocating the utility's facilities. The utility sued the city and the redevelopment agency to recover the relocation costs, asserting, among other theories, it was a third party beneficiary to the loan contract between the agency and the federal government.

The appellate court rejected this argument. It noted the utility failed to prove the existence of circumstance indicating the federal government intended to pay the utility for the relocation costs or was satisfying a legal duty to pay the costs—two traditional tests for determining the existence of a third party beneficiary.[3] The only evidence in the record addressing the utility's argument was the express language of the loan contract that precluded any third person with whom the agency dealt from creating any claim against the federal government relating to services performed for the redevelopment project. This language barred any third party claim against the federal government. (*East Bay, supra,* 93 Cal.App.3d at pp. 356–357.)

Unlike that case, the language of the contract here creates an exception to section 10.5's bar against third party claims, and does so for the intended benefit of plaintiffs. The contract at issue in *East Bay* did not contain a provision similar in nature to section 6 of the amendment. The case does not apply here.

---

[3] The Restatement of Contracts classified third party beneficiaries as either a donee beneficiary if the intent was to make a gift to him or a creditor beneficiary if the intent was to satisfy a duty owed to him by the promisee. The *East Bay* court followed this distinction. However, the Restatement Second of Contracts eliminated the classifications in favor of the broader term of "intended beneficiaries" because the older classifications "carry overtones of obsolete doctrinal difficulties." (Rest.2d Contracts, Introductory Note to § 302 pp. 438–439; see *id.*, § 302, p. 439.) California law has followed suit: "[T]he creditor-donee dichotomy as applied to third party beneficiaries is beginning to vanish. Although the two concepts are still viable, the specific descriptive words are being dropped by the courts and academicians to permit broader application of the doctrine." (*Gilbert Financial Corp. v. Steelform Contracting Co., supra,* 82 Cal.App.3d at p. 71.)

For all of the above reasons, we conclude, as a matter of law, plaintiffs were intended beneficiaries of the rights extended to them in section 6 of the amendment. They were not barred by section 10.5 of the agreement from enforcing those rights, and they may continue to do so in this action.[4]

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are awarded to plaintiffs. (Cal. Rules of Court, rule 27(a).)

Davis, Acting P. J., and Raye, J., concurred.

---

[4] Because we reverse the judgment on this ground, we need not address plaintiffs' other arguments.