# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL L. BALSAM, an individual,
     *Plaintiff-Appellant,*

v.

TUCOWS INC., a Pennsylvania
corporation; TUCOWS CORP, a
Mississippi corporation; ELLIOT
NOSS, an individual; PAUL KARKAS,
an individual,
     *Defendants-Appellees.*

No. 09-17625

D.C. No.
3:09-cv-03585-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Submitted December 9, 2010*
San Francisco, California

Filed December 16, 2010

Before: Dorothy W. Nelson, David R. Thompson, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

20233

## COUNSEL

Timothy J. Walton, Redwood City, California, and Daniel L. Balsam, San Francisco, California, for the plaintiff-appellant.

Bret Fausett and Imani Gandy, Adorno Yoss Alvarado & Smith, Los Angeles, California, for the defendant-appellee.

## OPINION

McKEOWN, Circuit Judge:

There is no simple remedy for the vast number of unsolicited emails, popularly known as "spam," that fill our electronic inboxes daily. Even though federal and state legislatures have adopted various laws to combat this problem, "spammers" continue to find new ways to advertise. Daniel Balsam, a victim of spam, seeks an alternative method of enforcement by bringing claims against the registrar of a domain site that bombarded him with more than 1,000 unwanted emails advertising a pornographic website. He claims that the registrar utilizes a system to hide the identity of spammers, making it difficult to identify the spammer. We consider Balsam's claim that he is an intended third-party beneficiary of an agreement between the registrar and the Internet Corporation for Assigned Names and Numbers ("ICANN"). Under Balsam's theory, the agreement's provisions on wrongful use of domain names inure to his benefit. Although his approach is novel and creative, it cannot survive a motion to dismiss.

### BACKGROUND

ICANN is a private, non-profit corporation that administers the registration of internet domain names. Tucows Inc. ("Tucows") is one of many registrars of domain names, accredited by ICANN to sell domain name registrations. To be accredited, Tucows had to enter into ICANN's Registration Accreditation Agreement ("RAA"), a standard form contract under which a registrar sells domain name registrations. A party that purchases a registered domain name from Tucows becomes the registered holder under the RAA.

Between October 2005 and May 2006, Balsam claims he received 1,125 "spam" emails advertising the website "adultactioncam.com." In an effort to ferret out the source of these emails, Balsam searched ICANN's public database, which listed Tucows as the registrar of the website and Angeles Technology, Inc. ("Angeles") as the registered name holder.

Balsam filed suit against Angeles alleging violations of California's law restricting unsolicited commercial email. *See* Cal. Bus. & Prof. Code § 17529.5. In March 2008, the district court in that case entered default judgment in Balsam's favor for $1,125,000. *See Balsam v. Angeles Technology, Inc. et al.*, 06-CV-4114 (N.D. Cal.).

Balsam's unsuccessful efforts to recover the default judgment from Angeles ultimately led to the lawsuit at issue in this appeal. After Balsam's initial search of the ICANN database, Angeles apparently opted into Tucows's "Contact Privacy" feature.[1] Balsam was thus unable to locate Angeles — or otherwise identify the true operator of "adultactioncam.com" — after the default judgment was entered in his favor. Unable to collect the $1.125 million judgment, Balsam contacted Tucows and demanded that it reveal the identity of the operator of "adultactioncam.com." Balsam claimed that under ¶ 3.7.7.3 of the RAA, Tucows was obligated to either reveal the operator's identity or pay the default judgment claim. That section provides:

---

[1]According to Balsam, this privacy feature allows a registered name holder to remove identifying information from the ICANN database. Instead of the actual domain name holder, an entity doing business as Tucows, ContactPrivacy.com, is listed as the registered name holder. Balsam alleges that Tucows, now acting as the registered name holder, then licenses the domain name registration back to the original registered name holder, who retains full control over operation of the domain name. By implementing the privacy option for Angeles, Tucows became both the registrar and registered name holder of "adultactioncam.com." Balsam characterizes this "Proxy Registration" arrangement as facilitating spammers' efforts to hide their identities.

A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it promptly discloses the identity of the licensee to a party providing the Registered Name Holder reasonable evidence of actionable harm.

In 2009, after Tucows refused to comply, Balsam filed a complaint against Tucows and two of its corporate officers asserting four causes of action: breach of contract, negligence, civil conspiracy, and declaratory relief. All of Balsam's claims stem from the allegation that Tucows violated ¶ 3.7.7.3 of the RAA. Balsam argues that as a third party beneficiary of the RAA entered into between Tucows and ICANN, he has the right to enforce Tucows's compliance with ¶ 3.7.7.3. Balsam reasons that Tucows should be liable for the full amount of the default judgment against Angeles. Importantly, Balsam acknowledges that all of his claims are dependent on his status as a third party beneficiary to the RAA.

Tucows filed a motion to dismiss, arguing that Balsam is not an intended third party beneficiary because the RAA does not refer to Balsam by name or class, and, in any event, the RAA contains an express "No Third-Party Beneficiaries" clause. The district court granted Tucows's motion and dismissed the complaint with prejudice, a decision that we review *de novo. See Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004).

## ANALYSIS

The foundation for Balsam's claims is the RAA contract between ICANN and Tucows. Balsam claims, in effect, that he is the intended beneficiary of that contract which, in his view, provides remedies for parties harmed by the wrongful use of proxy-registered domain names.

**[1]** California's contract principles on third party beneficiaries are well known. Under California law, a "contract, made expressly for the benefit of a third party, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821-22 (9th Cir. 1985) (citing *Strauss v. Summerhays*, 204 Cal. Rptr. 227, 233 (Ct. App. 1984)). Although a third party need not be expressly named or identified in a contract, a party must demonstrate "that [it] is a member of a class of persons for whose benefit it was made." *Spinks v. Equity Residential Briarwood Apartments*, 90 Cal. Rptr. 3d 453, 469 (Ct. App. 2009) (internal quotation marks and citations omitted) (citing *Kaiser Eng'rs, Inc. v. Grinnell Fire Prot. Sys. Co.*, 173 Cal. App. 3d 1050, 1055 (1985)). "Whether the third party is an intended beneficiary . . . involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered." *Prouty v. Gores Tech. Gr.*, 18 Cal. Rptr. 3d 178, 184 (Ct. App. 2004).

**[2]** Contrary to Balsam's arguments, nothing supports his claim that the parties to the RAA intended to benefit, or confer any rights upon, Balsam or any other third party. Indeed, the plain language of the RAA explicitly and unambiguously relinquishes all third party rights. Paragraph 5.10 of the RAA contains an express "No Third-Party Beneficiaries" clause: "*No Third-Party Beneficiaries*: This Agreement shall not be construed to create any obligation by either ICANN or Registrar to any non-party to this Agreement, including any Registered Name Holder."

In an effort to overcome the "No Third-Party Beneficiaries" clause, Balsam points to the principle that the specific contractual provisions control over the general, and, in any event, the "No Third-Party Beneficiaries" clause does not apply to

Tucows's actions in its capacity as a registered name holder. We disagree.

We first consider whether ¶ 3.7.7.3 provides specific language that trumps the RAA's "No Third Party Beneficiaries" clause. Although Balsam is correct that specific contractual provisions may control over a general clause, *see Prouty*, 18 Cal. Rptr. 3d at 185-86, there is no evidence that the parties intended such a result here. We repeat here the relevant provisions of paragraph 3.7.7.3:

> A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it promptly discloses the identity of the licensee to a party providing the Registered Name Holder reasonable evidence of actionable harm.

Balsam interprets ¶ 3.7.7.3 to obligate Tucows, acting as the registered name holder, to disclose the identity of the licensee operating "adultactioncam.com" to "a party providing . . . evidence of actionable harm," or accept liability for the domain name's wrongful use. Balsam urges that as a party that has provided evidence of harm, he is an intended beneficiary of ¶ 3.7.7.3.

**[3]** We must read ¶ 3.7.7.3 in conjunction with ¶ 3.7.7 and in the context of the entire agreement. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). Paragraph 3.7.7, which prefaces ¶ 3.7.7.3, provides as follows:

> 3.7.7: Registrar shall require all Registered Name Holders to enter into an electronic or paper registration agreement with Registrar *including at least the following provisions*: . . .

> 3.7.7.3: . . . . A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it promptly discloses the identity of the licensee to a party providing the Registered Name Holder reasonable evidence of actionable harm.

Reading the two provisions together, it is clear that ¶ 3.7.7.3 is not intended to bind either party to the RAA. Rather, ¶ 3.7.7.3 sets out a contractual provision that must be included in a *separate* agreement — as required by ¶ 3.7.7 — between a registrar and a registered name holder.[2]*See Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1118-19 (C.D. Cal. 2009) ("[P]aragraph 3.7.7.3 is not itself a term of the ICANN agreement; the agreement merely require[s] that [a registrar] include such a provision in future contracts between it and parties to whom it register[s] domain names.").

**[4]** Because ¶ 3.7.7.3 does not create an independent binding obligation for the parties to the RAA, this provision cannot be reasonably construed to confer a right or benefit to any party, let alone a third party. *See Roden v. AmerisourceBergen Corp.*, 113 Cal. Rptr. 3d 20, 46 (Ct. App. 2010) ("[Courts] must interpret a contract in a manner that is reasonable and does not lead to an absurd result."). "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." *Spinks*, 90 Cal. Rptr. 3d at 468. In the absence of any such intent, we conclude that ¶ 3.7.7.3 does not create any third party beneficiary rights that would control over the explicit "No Third-Party Beneficiaries" clause in the RAA.

---

[2]Notably, Balsam does not allege that Tucows failed to enter into a separate agreement with the registered name holder, in violation of ¶ 3.7.7 of the RAA.

**[5]** Balsam also argues that the "No Third-Party Beneficiaries" clause does not relieve Tucows of obligations to third parties with respect to actions taken as a *registered name holder*. This argument confuses the role of registrar and that of registered name holder. Tucows agreed to the RAA's terms in its capacity as a *registrar*. The introductory paragraph of the RAA provides that "[t]his REGISTRAR ACCREDITATION AGREEMENT ("Agreement") is by and between the Internet Corporation for Assigned Names and Numbers . . . and [Registrar Name], a [Organization type and jurisdiction] ("Registrar") . . . ." As the district court noted, there is simply no evidence that Tucows is bound to the terms of the RAA as a registered name holder. Indeed, the very provision that Balsam alleges Tucows violated is subsumed within a section entitled "Registrar Obligations." Balsam cannot have his cake and eat it too. The "No Third-Party Beneficiaries" clause explicitly protects Tucows from suit by third parties with respect to Tucows's obligations under the RAA. Balsam's characterization of Tucows's actions does not alter the contract.

**[6]** Given the absence of any evidence to the contrary, we conclude that the "No Third Party Beneficiaries" clause unambiguously manifests an intent *not* to create any obligations to third parties through the RAA. *See* Cal. Civ. Code § 1638 ("If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs."); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 400 (2d Cir. 2004) (the RAA's "No Third-Party Beneficiaries" provision "expressly and intentionally exclude[s] non-parties from claiming rights under it in court proceedings"). Accordingly, Balsam's claims, which are entirely dependent on his claimed status as a third-party beneficiary,[3] must fail.

---

[3] In light of Balsam's concession that his complaint is predicated on his status as a third-party beneficiary, no amendment could cure the fatal defect in Balsam's claims. The district court did not err in dismissing the complaint with prejudice. *See McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc*., 339 F.3d 1087, 1096 (9th Cir. 2003) (holding that dismissal with prejudice and without leave to amend is appropriate where "deficiencies in [plaintiff 's] claims cannot be cured by amendment").

**AFFIRMED.**