**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DALE BOZZIO, individually and on behalf of all others similarly situated,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>EMI GROUP LIMITED; CAPITOL RECORDS, LLC; EMI MUSIC NORTH AMERICA, LLC; EMI RECORDED MUSIC; and EMI MARKETING,<br>*Defendants-Appellees*. | No. 13-15685<br><br>D.C. No.<br>4:12-cv-02421-YGR<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted
June 10, 2015—San Francisco, California

Filed January 26, 2016

Before: Mary M. Schroeder, Sandra S. Ikuta,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

## SUMMARY[*]

### Standing / Third-Party Beneficiary

The panel reversed the district court's dismissal of a complaint filed by third-party beneficiary Dale Bozzio alleging breach of a recording contract between Bozzio's former band, Missing Persons, and defendant recording companies, and remanded.

The panel held that the district court erred in concluding that under California law Missing Persons, Inc.'s status as a suspended corporation precluded Bozzio's third-party beneficiary suit. The panel further held that it could not affirm on the ground that Bozzio waived the benefits of the Missing Persons, Inc. contract. The panel held that Bozzio pleaded facts sufficient to establish her standing to sue as a third-party beneficiary on the contract between Missing Persons, Inc. and the recording companies. Finally, the panel held that the district court erred in dismissing Bozzio's complaint with prejudice because amendment may not have been futile.

## COUNSEL

Cadio Zirpoli (argued), Guido Saveri, R. Alexander Saveri, and Carl N. Hammarskjold, Saveri & Saveri, San Francisco, California; Robert J. Bonsignore and Lisa Sleboda,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Bonsignore and Brewer, Belmont, New Hampshire, for Plaintiff-Appellant.

Peter I. Ostroff, Rollin A. Ransom, and Michelle B. Goodman (argued), Sidley Austin LLP, Los Angeles, California, for Defendants-Appellees.

## OPINION

CHRISTEN, Circuit Judge:

## BACKGROUND

This is a breach of contract case. Dale Bozzio, front woman of the former band Missing Persons, claims the defendant recording companies improperly treated certain sales of Missing Persons's recordings—through music download services, mobile phone mastertone downloads, and licensing for music streaming services—as record sales rather than revenue from licensing, and, as a result, paid the artists a lower royalty rate than the one provided for in their recording contracts. Bozzio is not a party to the recording contracts she seeks to enforce, but she filed suit as a third-party beneficiary.

The district court dismissed Bozzio's complaint. The court reasoned that even if Bozzio was an intended third-party beneficiary, the contracting party, Missing Persons, Inc., was a suspended corporation when Bozzio filed her complaint and its suspended status prevented it from bringing suit under California law. The district court ruled that because Missing Persons, Inc. lacked capacity to sue, a third-party beneficiary of Missing Persons, Inc.'s contract was

similarly without capacity to sue. The district court decided that any amendment would be futile and dismissed Bozzio's complaint with prejudice.

Bozzio's appeal requires us to resolve two questions: (1) Whether the district court erred by concluding that Missing Persons, Inc.'s suspended status precluded Bozzio's suit; and (2) whether Bozzio pleaded facts sufficient to establish her standing to sue as a third-party beneficiary of the contract between Missing Persons, Inc. and the recording companies. We answer "yes" to both questions, and we therefore reverse.[1]

## I.  Facts[2]

In 1980, Dale Bozzio ("Bozzio"), Terry Bozzio, and Warren Cuccurullo founded the band Missing Persons. According to the complaint, as the band's front woman, Bozzio "personified the sound and the look of the new wave scene in 1980s Los Angeles."

Capitol Records signed the band and entered into a Personal Services Agreement with the individual artists in 1982. Their agreement provided that the artists comprising Missing Persons would create master recordings that Capitol

---

[1] The district court had jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] These facts are taken from the complaint and its exhibits. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("When reviewing a motion to dismiss, we 'consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam))).

would sell and license. In return, Capitol promised to "pay royalties at rates ranging from 20% to 24% for sales in the United States and Canada, and from 7% to 8% for sales in the rest of the world." The agreement also provided that the artists would receive 50% of Capitol's net royalties from licensing, and that it would be construed in accordance with California law.

In 1983, Bozzio and the other band members formed Missing Persons, Inc., a California corporation, to serve as a loan-out company through which they would provide services to Capitol. "A loan-out corporation is a legal fiction employed for the financial benefit of successful artists and entertainers. It is a duly organized corporation, typically wholly owned by an artist, the sole function of which is to 'loan out' the services of the artist-owner to producers and other potential employers." Aaron J. Moss & Kenneth Basin, *Copyright Termination and Loan-Out Corporations: Reconciling Practice and Policy*, 3 Harv. J. Sports & Ent. L. 55, 72 (2012). The form offers "limited personal liability and beneficial tax treatment." *Id.* At least initially, Bozzio served as the president of Missing Persons, Inc.

Capitol subsequently entered into a new contract, called the Loan-Out Agreement, with Missing Persons, Inc. The Loan-Out Agreement substituted Missing Persons, Inc. in place of the individual band members in the original Personal Services Agreement and required Capitol to pay all artist royalties to Missing Persons, Inc., not to the artists. It also stated that Missing Persons, Inc. was to receive all contractual benefits, and that it, not Capitol, was to pay the individual artists all required royalties and advances. As part of the Loan-Out Agreement, each band member executed an Artist Declaration "as further inducement for Capitol to enter into

the Capitol-Company Agreement." Bozzio's declaration states that she "agree[s] to look solely to [Missing Persons, Inc.] for the payment of [her] fees and/or royalties . . . , and will not assert any claims in this regard against Capitol."

The music group disbanded in 1986, and, as of July 1, 1988, Missing Persons, Inc. was suspended under California Revenue and Taxation Code § 23301 due to failure to pay franchise taxes. The parties do not dispute that Missing Persons, Inc. remained a suspended corporation when Bozzio filed her complaint in this lawsuit.

## II. Proceedings

In 2012, Bozzio filed a putative class action suit in the Northern District of California. The operative complaint alleges breach of contract and other claims against EMI Group, Ltd., Capitol Records, LLC, EMI Music North America, LLC, EMI Recorded Music, and EMI Marketing (collectively, "Capitol"). Specifically, the complaint alleges that Capitol failed to "properly account for and pay its recording artists and music producers for income it has received, and continues to receive, from the licenses of its recorded music catalog for the sale of digital downloads, ringtones (or 'mastertones'), and streaming music." It requests declaratory judgment, injunctive relief, restitution, and attorneys' fees.

Capitol moved to dismiss Bozzio's complaint under Federal Rule of Civil Procedure 12(b)(6). Capitol primarily argued that Bozzio could not file suit because she expressly agreed in the Artist Declaration to "look solely to" the loan-out corporation for royalty payments and promised to "not assert any claim in this regard against Capitol." Bozzio

countered that she was an intended third-party beneficiary of the Loan-Out Agreement with an individual right to sue that is separate from the corporation's. According to Bozzio, the Artist Declarations "only prohibit[] an artist from asserting a claim against EMI when there is a dispute among individual band members over the internal allocation and distribution of royalties that have already been properly accounted for and paid by the record label to the artists' musical group or loan-out corporation." She further argued that the intent of the parties in executing the Artist Declarations presents factual questions that cannot be resolved by a motion to dismiss. Recognizing the corporation's suspended status, the district court requested additional briefing from the parties on the following question: "[S]hould plaintiff be permitted to proceed directly against Capitol if the loan-out company that is the party to the agreements with Capitol is a suspended corporation?"

After supplemental briefing and oral argument, the district court granted Capitol's motion to dismiss. The court did not resolve whether Bozzio is a third-party beneficiary of the Loan-Out Agreement. Instead, the court decided that because the contracting party, Missing Persons, Inc., was a suspended corporation, "regardless of Bozzio's standing to bring claims as a third party beneficiary, she cannot sue to enforce that agreement when the contracting corporation would have no capacity to do so." The court observed that California suspends corporate powers under California Revenue and Taxation Code § 23301 and § 23305 to induce corporations to pay taxes and maintain good standing. It concluded that allowing Bozzio to sue as a third-party beneficiary of the recording contract would permit her to "us[e] the corporate entity to contract, and gain the benefits of the corporate form, yet [allow her] to retain the right to sue

as an individual, third party beneficiary even when the corporation could not, on account of its failure to comply [with] its corporate obligations, including its tax liability." The district court ruled that it would be futile to grant leave to amend and dismissed Bozzio's complaint with prejudice. Bozzio timely appealed.

## STANDARD OF REVIEW

We review de novo a district court's decision to grant a motion to dismiss. *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014). We review "the district court's denial of leave to amend for abuse of discretion." *Id.*

## DISCUSSION

I.  *The district court erred by granting Bozzio's motion to dismiss on the ground that Missing Persons, Inc. lacked capacity to sue.*

Bozzio's complaint alleged that Missing Persons, Inc. and Capitol entered into the Loan-Out Agreement for her own benefit and for the benefit of her bandmates, and that she is therefore entitled to bring suit to protect her interests. The district court held that Bozzio cannot sue on the contract because, even if she is a third-party beneficiary to the Agreement, the contracting party—Missing Persons, Inc.—is a suspended corporation. On appeal, Bozzio argues that the suspended status of the contracting corporate party is irrelevant when the party bringing the action is a third-party beneficiary of the contract, and the district court's dismissal of the First Amended Complaint on that basis constitutes reversible error. We agree with Bozzio that the district court erred in holding that, even if Bozzio is a third-party

beneficiary, she cannot bring an action while Missing Persons, Inc. is suspended.

California law provides that if a corporation fails to pay taxes, penalties, interests, or any liability, its "corporate powers, rights and privileges" will be suspended. Cal. Rev. & Tax Code § 23301. "The suspension of the corporate powers, rights, and privileges means a suspended corporation cannot sue or defend a lawsuit while its taxes remain unpaid." *Kaufman & Broad Cmtys., Inc. v. Performance Plastering, Inc.*, 39 Cal. Rptr. 3d 33, 36 (Cal. Ct. App. 2006); *see also Gar-Lo, Inc. v. Prudential Sav. & Loan Ass'n*, 116 Cal. Rptr. 389, 390 (Cal. Ct. App. 1974) (discussing the effect of suspension under § 23301 on a corporation's right to sue).

In dismissing Bozzio's complaint, the district court concluded that, even if Bozzio is a third-party beneficiary of the contract between Missing Persons, Inc. and Capitol Records, she cannot sue to enforce the agreement because the contracting party would have no capacity to do so. But the cases cited by the district court for this proposition, *Kaufman & Broad Communities, Inc.*, 39 Cal. Rptr. 3d 33, and *AMESCO Exports, Inc. v. Associated Aircraft Manufacturing & Sales, Inc.*, 977 F. Supp. 1014 (C.D. Cal. 1997), *order vacated on other grounds*, 87 F. Supp. 2d 1013 (C.D. Cal. 1997), do not support it. *Kaufman & Broad Communities, Inc.* held only that an insurance company could not step into the shoes of a suspended corporation and litigate in its name; rather, it had to intervene in the legal action against its insured. 39 Cal. Rptr. 3d at 34–37. The court did not address whether a third-party beneficiary, which has an independent cause of action on a contract, *see* Cal. Civ. Code § 1559, could bring an action for breach of contract against the promisor when the promisee is a suspended corporation.

*AMESCO Exports, Inc.* also fails to support the proposition. It concluded that the sole shareholder of a suspended corporation could not bring a breach of contract claim against a manufacturer based on a contract signed by the suspended corporation and the manufacturer, but this conclusion was premised on the sole shareholder's inability to demonstrate that it was a third-party beneficiary of the contract. *AMESCO* does not answer whether the shareholder would have been allowed to sue if the promisee had intended to give the beneficiary such a right. 977 F. Supp. at 1016.

The parties have not cited, and we have not found, any California case holding that a third-party beneficiary cannot sue the promisor for breach of contract when the promisee is a suspended corporation. Further, the California case most closely on point supports Bozzio's argument that Missing Persons, Inc.'s incapacity does not bar her third-party beneficiary suit. *See Performance Plastering v. Richmond Am. Homes of Cal., Inc. (Richmond American Homes)*, 63 Cal. Rptr. 3d 537 (Cal. Ct. App. 2007). *Richmond American Homes* involved a series of construction claims between a homebuilder and one of its subcontractors, Performance Plastering. *Id.* at 540. Throughout the series of claims, Performance Plastering was a suspended corporation for failing to pay taxes. *Id.* at 541.

After the homebuilder received complaints about the quality of Performance Plastering's stucco work, the two entered into a settlement agreement that released Performance Plastering and its insurers from liability for claims arising from the construction of sixty-five homes in exchange for a cash payment. *Id.* Additional defective construction claims were alleged, and the homebuilder and Performance Plastering's insurer entered into a second settlement

agreement by which the homebuilder accepted another cash payment, dismissed Performance Plastering from all claims, and agreed to give five-days notice to the insurer of any potential indemnity claims. *Id.* A third complaint was filed for construction defects, this time against the homebuilder, and the homebuilder filed a cross-complaint against Performance Plastering. *Id.* In response, Performance Plastering filed a cross-claim in which it alleged that the homebuilder's claims were barred because it failed to give the insurer five days notice as required by the second settlement agreement. *Id.* Through the insurer, the parties entered a third settlement agreement, reserving the "right to seek judicial determination of the applicability and enforceability" of the previous agreements. *Id.* The insurer and Performance Plastering then sued the homebuilder for breach of contract and declaratory relief based on the homebuilder's violation of those previous settlement agreements. *Id.*

The trial court dismissed the case because it concluded that Performance Plastering's suspended corporate status prevented it from bringing suit, and the insurer had no standing to sue as either a party or third-party beneficiary. *Id.* at 542. The California Court of Appeal reversed. *Id.* at 545. It held that Performance Plastering's suspended status rendered its contracts with the homebuilder voidable, but because neither party to the contract had sought rescission, the insurer had standing to sue the homebuilder for breach of contract as a third-party beneficiary of the settlement agreements. *Id.* at 544–45. Although the court did not expressly address the question whether Performance Plastering's lack of capacity to sue due to its suspended status deprived the insurer of that capacity, the court let the case go forward, implying that such lack of capacity does not

necessarily deprive a third-party beneficiary of standing to sue.

Like the insurer in *Richmond American Homes*, Bozzio argues that she is a third-party beneficiary of the Loan-Out Agreement and that the suspended status of Missing Persons, Inc. does not bar her individual suit. Although *Richmond American Homes* does not go that far, it indicates that California courts do not consider the incapacity of the promisee to a contract to be an absolute bar to a lawsuit by a third-party beneficiary. *See id.*; *Ronay Family Ltd. P'ship v. Tweed*, 157 Cal. Rptr. 3d 680, 687 (Cal. Ct. App. 2013) ("[T]he rule that a promisor's defense against a promisee is also good against a third party beneficiary does not apply when the language of the contract or the circumstances surrounding its execution establish that the rights of the beneficiary are not subject to that defense.").

The district court recognized that *Richmond American Homes* lends support to Bozzio's position, but it distinguished the case from Bozzio's situation based on Bozzio's relationship to Missing Persons, Inc. The district court reasoned that "the insurer in [*Richmond American Homes*] was not closely related to the [suspended] corporation and was not in a position to revive the corporation and pursue its legal rights." The court considered Bozzio's relationship to Missing Persons, Inc. to be dispositive:

> By contrast, in this case Bozzio is directly, though not necessarily entirely, responsible for the suspended status of the corporation. While the loan-out corporation here is not in Bozzio's sole control, she has alleged that she is its president and the "driving force" behind

it. [Citing to First Amended Complaint paragraphs 22 and 23] Presumably, she could take action to revive the corporation. Moreover, whether Bozzio could revive the corporation on her own does not present a question of fact barring dismissal, as she contends. To the contrary, the corporation's and thus Bozzio's, lack of capacity to pursue the claims appears from the face of the complaint.

When sitting in diversity jurisdiction, "[t]his court will follow a state supreme court's interpretation . . . in the absence of extraordinary circumstances." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986). Where the state's highest court has not decided an issue, "this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions." *Id.* Here, the California Supreme Court has not decided whether a promisee corporation's suspended status precludes suit by a third-party beneficiary of the contract, but in *Richmond American Homes*, the California Court of Appeal suggested that a third-party beneficiary suit *may* go forward notwithstanding the promisee's incapacity to sue. *See* 63 Cal. Rptr. 3d at 544–45. Therefore, the district court erred in its determination that a third-party beneficiary cannot state a claim if the promisee is a suspended corporation under Cal. Rev. & Tax Code § 23301.

We are not persuaded that Bozzio's relationship to Missing Persons, Inc. ends her appeal. First, whether Bozzio "could take action to revive the corporation" does not necessarily distinguish her from the insurer in *Richmond American Homes*. California law provides that revival of a

corporation "may be made by any stockholder or creditor, by a majority of the surviving trustees or directors thereof, by an officer, *or by any other person who has interest in the relief from suspension*." Cal. Rev. & Tax Code § 23305 (emphasis added). As an entity impacted by Performance Plastering's tax default, the insurer in *Richmond American Homes* appears to have had "an interest" in that company's revival and therefore—like Bozzio—likely had the ability to apply for its revival.

Second, no California case has decided whether a party's status as a former shareholder or officer of a suspended corporation negates that party's ability to bring suit as a third-party beneficiary of a contract entered into by the corporation. The district court concluded that permitting Bozzio to sue on her own behalf would allow her to reap the benefits of the corporate form while avoiding the consequences of Missing Persons, Inc.'s tax default, but its analysis fails to account for § 23305b, a provision that expressly allows the Franchise Tax Board to revive a corporation "without full payment of the taxes, penalties, and interest due" if revival "will improve the prospects for collection of the full amount due." Cal. Rev. & Tax Code § 23305b. This statute reflects the legislature's intention that certain suspended corporations may be revived if doing so serves the state's ultimate goal of collecting back taxes and penalties. Considering this provision, we do not agree that allowing Bozzio's suit to go forward would necessarily undermine legislative intent. As far as we know, the State of California has not considered whether to reinstate Missing Persons, Inc. to allow it to pursue its claim against Capitol.

Finally, the record does not support the district court's finding that Bozzio has control over the defunct corporation

and an ability to revive it. Contrary to the district court's interpretation, Bozzio never alleged she is currently the driving force behind the loan-out corporation. Rather, the complaint alleged that—from the time the band was formed in the 1980s, until the group broke up—Bozzio was a "member and driving signature force" *of the band*. Bozzio served as president of Missing Persons, Inc. for some period of time, but she argued in our court that she cannot revive the corporation under § 23305 because only Missing Persons, Inc. can access the royalty statements and relevant records that are necessary to calculate the amount of back taxes owed. According to Bozzio, she cannot calculate, much less pay, the corporation's back taxes because she cannot access the royalty statements. Case law applying § 23301 recognizes that its purposes are not served "by penalizing an innocent person or entity." *Biggs v. Cal. Ins. Guarantee Assn.*, 179 Cal. Rptr. 16, 19 (Cal. Ct. App. 1981). While Bozzio is not "innocent" in the sense that she is unrelated to the defunct corporation, the face of the complaint does not demonstrate that Bozzio is "directly . . . responsible for the suspended status of the corporation."

In light of the above, it was an error to grant the motion to dismiss on the ground that Missing Persons, Inc. was a suspended corporation.

II. *We cannot affirm the district court on the ground that Bozzio waived the benefits of the Missing Persons, Inc. contract.*

Even if Missing Persons, Inc.'s suspended status does not preclude Bozzio's suit, Capitol maintains that dismissal is proper because Bozzio waived any right to sue Capitol—including the right to sue as a third-party

beneficiary—by signing an Artist Declaration in which she agreed that she would not "look to" Capitol for payment of royalties:

> For the express and direct benefit of Capitol, I hereby:
>
> . . .
>
> Agree to look solely to [Missing Persons, Inc.] for the payment of my fees and/or royalties, as the case may be, and will not assert any claim in this regard against Capitol or attempt to prevent the manufacture, sale, licensing or distribution of records manufactured from the masters produced under the Capitol-Company Agreement.

This language from the Artist Declaration suggests that Bozzio waived her right to sue as a third-party beneficiary, but other language in the Loan-Out Agreement is in tension with that conclusion.

"Under California law, a 'contract, made expressly for the benefit of a third party, may be enforced by him at any time before the parties thereto rescind it.'" *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010) (quoting Cal. Civ. Code § 1559). "[A] third party beneficiary contract must either satisfy an obligation of the promisee to pay money to the beneficiary, or the circumstances indicate the promisee intends to give the beneficiary the benefit of the promised performance." *Med. Staff of Doctors Med. Ctr. in Modesto v. Kamil*, 33 Cal. Rptr. 3d 853, 858 (Cal. Ct. App. 2005).

Whether "the circumstances indicate that" Capitol and Missing Persons, Inc. intended to give Bozzio "the benefit of the promised performance" cannot be resolved on the face of the parties' pleadings. *See id.* The Loan-Out Agreement expressly provides that Bozzio and her bandmates would incur obligations and receive benefits, notwithstanding the fact that they were no longer contracting parties. For example, if Missing Persons, Inc. ceased to exist, the individual artists were to assume its contractual obligations in the Agreement with Capitol:

> If during the term of the Capitol-Company Agreement or any extensions, renewals or modifications thereof, Company shall cease to be entitled to make my services available to Capitol in accordance with the terms of the Capitol-Company Agreement, or if Company shall fail or refuse to make my services available to Capitol, I shall, at Capitol's request, do all such acts and things as shall give to Capitol the same rights, privileges and benefits as Capitol would have under the Capitol-Company Agreement if Company had continued to be entitled to my services, and I shall make the same available to Capitol, and such rights, privileges and benefits shall be enforceable on Capitol's behalf against me.

Further, the Loan-Out Agreement contemplates royalty payments to individual artists:

> Company [Missing Persons, Inc.] shall have the benefit of all agreements, representations and warranties made by Capitol to Artist in

> the [original agreement] provided, however, that Company shall not receive any rights hereunder greater than those which Artist would receive under the [original agreement] had this document never been executed. *Company shall pay Artist all royalties and advances required to be paid pursuant to the Exhibit.*[3]

(emphasis added). These provisions suggest the parties contemplated that "the promisee intends to give [Bozzio] the benefit of the promised performance." *See Med. Staff of Doctors Med. Ctr. in Modesto*, 33 Cal. Rptr. 3d at 858; *see also Prouty v. Gores Tech. Grp.*, 18 Cal. Rptr. 3d 178, 184 (Cal. Ct. App. 2004) ("If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person." (citation omitted)).

Capitol strenuously argues that by agreeing "not [to] assert any claim[s] . . . against Capitol," Bozzio waived her right to sue as a third-party beneficiary. Bozzio counters that this "look solely to" clause was intended to prohibit an artist from asserting a claim against Capitol only "when there is a dispute among individual band members over the internal allocation and distribution of royalties that have already been properly accounted for and paid by the record label to the artists' musical group or loan-out corporation." Nothing in

---

[3] In the Loan-Out Agreement, the footnote to this text indicates: "[P]rovided that such monies are paid by Capitol to Company, which payment by Capitol shall be conditioned upon Company's and Artist's performance of its material obligations hereunder and pursuant to the Agreement."

the record forecloses Bozzio's reading of this contract language.

We agree with Bozzio that whether she forfeited the ability to sue as a third-party beneficiary is a fact-bound inquiry ill-suited to resolution at the motion to dismiss stage. *See Prouty*, 18 Cal. Rptr. 3d at 184 ("Whether the third party is an intended beneficiary or merely an incidental beneficiary involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered." (quoting *E. Aviation Grp., Inc. v. Airborne Express, Inc.*, 8 Cal Rptr. 2d 355, 357–58 (Cal. Ct. App. 1992)). On remand, a record can be developed that will allow consideration of Bozzio's claim that she was an intended third-party beneficiary of the Agreement.

III.    *Amendment may not have been futile.*

Because amendment may not have been futile, it was error to dismiss Bozzio's complaint with prejudice. *See Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (noting that district courts are required to allow parties to freely amend absent "undue delay, bad faith . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of amendment" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

The district court dismissed Bozzio's complaint on the sole ground that Bozzio "cannot sue to enforce [the] agreement when the contracting corporation[, Missing Persons, Inc.,] would have no capacity to do so." The court denied Bozzio leave to amend presumably because Bozzio

disclaimed any ability to revive the corporation under § 23305, rendering any amendment futile.

Likely because the parties failed to brief the issue, the court's order did not take into account that California's tax code may allow Bozzio to revive Missing Persons, Inc. without paying back taxes. Section 23305b provides: "[T]he Franchise Tax Board may revive a corporation to good standing *without full payment* of the taxes, penalties, and interest due if it determines that the revivor *will improve the prospects for collection of the full amount due*." Cal. Rev. & Tax Code § 23305b (emphasis added). An application to revive a suspended corporation "may be made by any stockholder or creditor, by a majority of the surviving trustees or directors thereof, by an officer, or by any other person who has interest in the relief from suspension." *Id.* § 23305. It appears that Bozzio is eligible to apply to have Missing Persons, Inc. restored to good standing under § 23305b because she is a "person who has interest in the relief from suspension." California may decide that revival under this provision is consistent with its objective of securing payment of corporate taxes because—once revived—Missing Persons, Inc. could pursue its claims and thereby "improve the prospects for collection of the full amount due." *See id.* § 23305b. Because revival under § 23305b may be possible, we cannot say that amendment was futile. The district court therefore abused its discretion by dismissing Bozzio's complaint with prejudice. *See Sharkey*, 778 F.3d at 774.

## CONCLUSION

The district court erred in dismissing the complaint, and we cannot affirm on different grounds.

**REVERSED AND REMANDED.**