**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LACANO INVESTMENTS, LLC, NOWELL AVENUE DEVELOPMENT, and AVA L. EADS, on behalf of themselves and the class they seek to represent, *Plaintiffs-Appellants*, | No. 13-35854 D.C. No. 1:12-CV-00014-TMB |
| v. | OPINION |
| JOE BALASH, Commissioner, Alaska Department of Natural Resources, in his official capacity, BRENT GOODRUM, Director, Division of Minding Land & Water, Alaska Department of Natural Resources, *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, District Judge, Presiding

Argued and Submitted
June 3, 2014—Anchorage, Alaska

Filed August 28, 2014

Before: J. Clifford Wallace, Kim McLane Wardlaw,
and Morgan Christen, Circuit Judges.

Opinion by Judge Wallace

# SUMMARY*

## Sovereign Immunity

The panel affirmed the dismissal for lack of subject matter jurisdiction of an action against Alaska officials who determined that under the Submerged Lands Act of 1953, streambeds claimed by the plaintiffs were owned by the State of Alaska.

The panel held the plaintiffs could not avoid a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) merely because they asserted in their complaint that Alaska did not own the streambeds.

The panel held that state sovereign immunity barred the action because the *Ex parte Young* doctrine, providing that the Eleventh Amendment does not bar actions when individual citizens seek only injunctive or prospective relief against state officials who would have to implement a state law that is allegedly inconsistent with federal law, did not apply. The panel concluded that under the exception to *Ex parte Young* set forth in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), the relief the plaintiffs sought was close to the functional equivalent of quiet title.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Gina Marie Cannan (argued), Steven J. Lechner, Mountain States Legal Foundation, Lakewood, Colorado; Eric Twelker, Juneau, Alaska, for Plaintiffs-Appellants.

Jessica Moats Alloway (argued), Assistant Attorney General, State of Alaska Department of Law, Anchorage, Alaska; Vanessa Maria Lamantia, Assistant Attorney General, State of Alaska Department of Law, Juneau, Alaska, for Defendants-Appellees.

## OPINION

WALLACE, Circuit Judge:

Plaintiffs-Appellants Lacano Investments, LLC, Nowell Avenue Development, and Ava L. Eads, allege that they hold land patents that were issued by the federal government many years before Alaska entered the Union. The patents give title to certain streambeds in Alaska. In 2010 and 2011, the Alaska Department of Natural Resources determined that the waterways above these streambeds were navigable in 1959, the year Alaska was admitted to the Union, and remain navigable. Under the Submerged Lands Act of 1953, all land beneath such waterways belongs to the State of Alaska. *See* 43 U.S.C. § 1311(a) ("[i]t is determined and declared to be in the public interest that (1) title to and ownership of the lands beneath navigable waters within the boundaries of the respective States . . . are, subject to the provisions hereof, recognized, confirmed, established, and vested in and assigned to the respective States"); Act to Provide for the Admission of the State of Alaska into the Union, Pub. L. No.

85-508, 72 Stat. 339, 343 § 6(m) (1958) ("[t]he Submerged Lands Act of 1953 shall be applicable to the State of Alaska and the said State shall have the same rights as do existing States thereunder"). The Department sent letters to Plaintiffs with the navigability determinations and its conclusion that the streambeds are "state-owned."

According to Plaintiffs, Alaska's determination that the waterways have been navigable since 1959 does not disturb the title to the land that was granted to them by the federal patents. Plaintiffs sued the Alaska officials who made the navigability determinations in federal court. Plaintiffs allege that they retain title to the disputed lands because, under the Submerged Lands Act, streambeds that had already been patented by the federal government were not granted to Alaska upon its statehood. *See* 43 U.S.C. § 1301(f) ("[t]he term 'lands beneath navigable waters' [that belongs to the states] does not include the beds of streams in lands . . . if such streams were not meandered in connection with the public survey of such lands under the laws of the United States and if the title to the beds of such streams was lawfully patented or conveyed by the United States"). Plaintiffs sought a declaratory judgment that the navigability determinations, and thus the conclusions that the streambeds were state-owned, violated 43 U.S.C. § 1301(f), as well as an injunction prohibiting Defendants from claiming title to the lands beneath the waterways.

The state officials moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. The district court agreed, and dismissed the action with prejudice.

Plaintiffs filed a timely notice of appeal. We review a district court's decision to grant a motion to dismiss for lack of subject matter jurisdiction de novo. *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011). We review the district court's denial of leave to amend for abuse of discretion. *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 598 (9th Cir. 2014). We have jurisdiction under 28 U.S.C. § 1291, and affirm.

I.

The state officials moved to dismiss the complaint. The "jurisdictional attack" in their motion was "facial," which means that the state officials "assert[] that the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction," but the officials do not "dispute[] the truth of the allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In this facial attack, we must accept all of the factual allegations in the complaint as true. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Plaintiffs argue that because we must accept all of their factual allegations as true, we must reverse the district court, insofar as the complaint alleges that the lands are by definition not submerged, state-owned, lands under federal law. In other words, Plaintiffs argue that because we accept the allegations in the complaint as true, at this stage of the litigation we must conclude that Alaska has no interest in the lands under Plaintiffs' complaint, which means that it was error to dismiss the complaint for lack of subject matter jurisdiction.

While we do accept all of the *factual* allegations in the complaint as true, *id.*, we do not accept *legal conclusions* in the complaint as true, even if "cast in the form of factual allegations." *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (citation omitted). Plaintiffs' complaint does not include factual allegations that the streambeds are privately owned under the Submerged Lands Act. Instead, the complaint contains only legal conclusions to that effect: "[t]he Alaska Statehood Act delineates the terms under which statehood was granted" and thus Plaintiffs' lands are "exempted from the Submerged Lands Act"; "Plaintiff Lacano is the fee simple owner of record . . . "; "Plaintiff Nowell is the fee simple owner of record . . ."; "Plaintiff Eads is the fee simple owner . . . ".

Further, we also "may look beyond the complaint and consider extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003). Attached to the complaint are the letters sent by the Department of Natural Resources, upon which the complaint relies to explain the basis of Plaintiffs' action. Those letters demonstrate Alaska's claim of ownership to the disputed properties.

Thus, Plaintiffs cannot avoid a motion to dismiss under Rule 12(b)(1) merely because they asserted in their complaint that Alaska does not own the streambeds. *See, e.g.*, *W. Mohegan Tribe and Nation v. Orange Cnty.*, 395 F.3d 18, 20, 23 (2d Cir. 2004) (dismissing a complaint for lack of subject matter jurisdiction despite "accepting the factual allegations contained in the complaint as true" where the complaint asserted that the plaintiffs, rather than the State of New York, held title to disputed lands).

## II.

We next consider whether state sovereign immunity bars Plaintiffs' action. The Eleventh Amendment bars federal courts from hearing certain "suit[s]" filed by individual citizens against a state without the consent of the state. U.S. Const. amend. XI; *see generally Hans v. Louisiana*, 134 U.S. 1 (1890). But that Amendment does not bar actions when citizens seek only injunctive or prospective relief against state officials who would have to implement a state law that is allegedly inconsistent with federal law. *See generally Ex parte Young*, 209 U.S. 123 (1908). "The *Ex parte Young* doctrine is founded on the legal fiction that acting in violation of the Constitution or federal law brings a state officer into conflict with the superior authority of the Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Cardenas v. Anzai*, 311 F.3d 929, 935 (9th Cir. 2002) (internal quotation marks omitted) (citing *Young*, 209 U.S. at 159–60). Not all actions that solely seek prospective relief against state officials fall within the *Young* exception, however. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997).

## A.

In *Coeur d'Alene*, the Coeur d'Alene Tribe sued the State of Idaho and state officers who enforced Idaho law in federal court, alleging an interest under federal law in lands submerged under navigable waterways within the original boundaries of the Coeur d'Alene Reservation. *Id.* at 264–65. Those lands had been "long deemed by [Idaho] to be an integral part of its territory." *Id.* at 282. The Tribe brought title claims, sought a declaratory judgment to establish its

right to use and occupy the lands, and sought an injunction prohibiting Idaho from infringing upon its rights to the land. *Id.* at 265. The "underlying dispute" was "[w]hether the Coeur d'Alene Tribe's ownership extends to the banks and submerged lands of [] [L]ake [Coeur d'Alene] and various . . . rivers and streams [within the boundaries of the Coeur d'Alene Reservation] . . . or instead ownership is vested in the State of Idaho." *Id.* at 264.

Idaho moved to dismiss the complaint on Eleventh Amendment sovereign immunity grounds. *Id.* at 265. When the case reached the Supreme Court, a five-Justice majority agreed that the Eleventh Amendment barred the action. *Id.* at 288; *id.* at 296–97 (O'Connor, J., concurring).

Justice Kennedy's principal opinion was joined in part by four other members of the Supreme Court. The principal opinion recognized that "[a]n allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Coeur d'Alene*, 521 U.S. at 281. But the case was "unusual in that the Tribe's suit [was] the functional equivalent of a quiet title action which implicates special sovereignty interests." *Id.* According to the principal opinion, the parties (and the Court) agreed "that the Tribe could not maintain a quiet title suit against Idaho in federal court, absent the State's consent." *Id.*

Although the Tribe was not actually seeking quiet title relief, the Court concluded that the declaratory and injunctive relief the Tribe sought was "close to the functional equivalent of quiet title." *Id.* at 282. This similarity to a quiet title action was "especially troubling when coupled with the far-reaching and invasive relief the Tribe seeks," which if successful

"would bar the State's principal officers from exercising their governmental powers and authority over the disputed lands and waters" because the Tribe had independent sovereign authority. *Id.* The Court looked to "the realities of the relief the Tribe demand[ed]." *Id.* Because of the historical and legal importance of submerged lands to state sovereignty, the Court held that "if the Tribe were to prevail, Idaho's sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." *Id.* at 287. Thus, "[t]he dignity and status of its statehood allow[ed] Idaho to rely on its Eleventh Amendment immunity," and the Court ordered the Tribe's action dismissed. *Id.* at 287–88.

Justices O'Connor, Scalia and Thomas joined in the portions of *Coeur d'Alene* described above, and joined in full a separate partial concurrence written by Justice O'Connor. Although this was only a partial concurrence, we analyze it along with the principal opinion in which only two Justices concurred to determine what part of the principal opinion was agreed upon by the five-Justice majority of the Court. *See Agua Caliente*, 223 F.3d at 1046 (discussing both the principal opinion and concurrence of *Coeur d'Alene*). In her concurrence, Justice O'Connor agreed that "[t]his case is unlike a typical *Young* action," and thus barred by the Eleventh Amendment, for two reasons. 521 U.S. at 289 (O'Connor, J., concurring). First, the Tribe's action was "the functional equivalent of an action to quiet [the Tribe's] title to the bed of Lake Coeur d'Alene," which was not acceptable under the Eleventh Amendment because "[a] federal court cannot summon a State before it in a private action seeking to divest the State of a property interest." *Id.* Second, "the Tribe does not merely seek to possess [the] land . . . [but] seeks to eliminate altogether the State's regulatory power over the

submerged lands at issue." *Id.* Justice O'Connor concluded that these distinctions from the "typical *Young* action" meant that "the Tribe's suit must be dismissed." *Id.* at 291.

## B.

Here, Plaintiffs' action implicates precisely the same sovereignty interests as in *Coeur d'Alene* itself. In their complaint, Plaintiffs allege they are "fee simple owners" of the streambeds beneath the navigable waters, seek to lift the "cloud" from their properties, and request that a federal court return "full use and enjoyment of their property." The relief Plaintiffs request "is close to the functional equivalent of quiet title." *Id.* at 282. The lands at issue are streambeds beneath navigable waters, which are "lands with a unique status in the law and infused with a public trust." *Id.* at 283. If the court were to rule in Plaintiffs' favor, the "benefits of ownership and control would shift from the State" to Plaintiffs. *Id.* at 282. Thus, the Eleventh Amendment bars this action.

*Coeur d'Alene* provides only a "unique" and "narrow" exception to *Young*, and does not "bar all claims that affect state powers, or even important state sovereignty interests." *Agua Caliente*, 223 F.3d at 1048. But when an action implicates the "exact issues" of *Coeur d'Alene* itself, namely "navigability of waters or the state's control over submerged lands," federal courts lack jurisdiction to hear the case. *Anderson-Tully Co. v. McDaniel*, 571 F.3d 760, 763 (8th Cir. 2009). This case presents the same issues as *Coeur d'Alene*.

Although we affirm the district court's judgment that it lacked jurisdiction over this action, we do not affirm its reasoning. Guided by the parties, the district court made a

good-faith effort to determine whether Alaska has a sufficient interest in the lands to assert Eleventh Amendment immunity, and did so by analogizing to other circumstances in which a government entity claims title to property. But that attempt to assess the interest in the property held by the state is not necessary under *Coeur d'Alene*. The approach we take instead is "functional": we compare the relief sought by Plaintiffs to a quiet title action, and dismiss because it was "close to the functional equivalent" of such an action, as the lands at issue are submerged lands beneath navigable waters, which have a "unique status in the law" insofar as "[s]tate ownership of them has been considered an essential attribute of sovereignty." 521 U.S. at 282–83 (internal quotation marks and citation omitted); *see also Agua Caliente*, 223 F.3d at 1046 ("[t]he challenge posed by *Coeur d'Alene* is to figure out whether the Tribe's claims here are of the same character as those in *Coeur d'Alene*").

## C.

We next turn to Plaintiffs' counterarguments.

### 1.

Plaintiffs first suggest that *Coeur d'Alene* is no longer good law. They assert that we should instead follow the Supreme Court's more recent guidance, that "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Coeur d'Alene*, 521 U.S. at 296).

But *Coeur d'Alene* remains binding upon us. *Verizon* did not overrule *Coeur d'Alene*, and in fact the Court quoted language from the earlier opinion. Moreover, the Court recently affirmed *Coeur d'Alene*'s core holding that the Eleventh Amendment bars actions that are "the functional equivalent of a quiet title suit" against a state. *Va. Office for Prot. and Advocacy v. Stewart*, 131 S. Ct. 1632, 1639–40 (2011) (quoting *Coeur d'Alene*, 521 U.S. at 282). To the extent there is some tension between the "straightforward inquiry" recognized in *Verizon* and the "unique" and "narrow" circumstances of *Coeur d'Alene*, we must follow *Coeur d'Alene*, "which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (citation omitted).

### 2.

Plaintiffs next argue that this case is "the exact opposite factual situation" of *Coeur d'Alene*, because here Alaska sought to divest Plaintiffs of their alleged longstanding title, whereas in *Coeur d'Alene*, it was the plaintiffs who sought to divest the state of its longstanding title. But that is not a proper distinction of *Coeur d'Alene*. The majority opinion was not predicated upon the length of the state's claim to title. Instead, it was based upon the "principle that [submerged lands beneath navigable waters] are tied in a unique way to sovereignty," regardless of when the state determined that the waters were navigable. 521 U.S. at 286; *see also Anderson-Tully*, 571 F.3d at 761 (dismissing under *Coeur d'Alene* despite the recency of the state's title claim to the submerged lands).

3.

Finally, Plaintiffs attempt to distinguish their action from that in *Coeur d'Alene* because there, if the tribe were to have been awarded the property, it would have deprived the State of Idaho of "all regulatory power" over the submerged lands. This is true: federally-recognized tribes are themselves sovereigns. *See, e.g.*, *Coeur d'Alene*, 521 U.S. at 268 (stating that "Indian tribes . . . should be accorded the same status as foreign sovereigns"). If the Coeur d'Alene Tribe were awarded title, Idaho may not have had any regulatory authority at all over the disputed lands. Because Plaintiffs in this case are not a separate sovereign, they argue that "Alaska would remain free to exercise lawful regulatory jurisdiction over Landowners' property as they do over other private lands." According to Plaintiffs, this case is distinguishable from *Coeur d'Alene* because there is no threat that "all regulatory power" would be divested from Alaska.

This is not a sufficient distinction of *Coeur d'Alene*. Both the principal opinion and Justice O'Connor's concurrence mention tribal sovereignty as a consideration to support the conclusion that the action should be dismissed. But neither opinion considered this determinative.

The principal opinion discussed the Tribe's sovereign character, which meant its action sought "far-reaching and invasive relief" that was "in effect, a determination that the lands in question are not even within the regulatory jurisdiction of the State." *Id.* at 282. At that point in the opinion, however, the majority had already concluded that "Eleventh Amendment would bar" "a quiet title suit against Idaho" or relief that "is close to the functional equivalent of quiet title" in federal court. *Id.* at 281–82. The fact that the

plaintiff was a federally recognized tribe only made the Tribe's action "especially troubling" in its impact on state sovereignty. *Id.* at 282.

Similarly, Justice O'Connor had two bases for distinguishing the case from a typical *Young* action that could be heard in federal court. *Id.* at 289 (O'Connor, J., concurring). First, "the suit is the functional equivalent of an action to quiet [the plaintiff's] title to the bed of Lake Coeur d'Alene." *Id.* "A federal court cannot summon a State before it in a private action seeking to divest the State of a property interest." *Id.* It was only her second basis that discussed the tribe's attempt to divest Idaho of all regulatory power. Even in that context, she continued to make clear that "[c]ontrol of [submerged lands] is critical to a State's ability to regulate use of its navigable waters." *Id.* Thus, in Justice O'Connor's view, states must possess actual control over submerged lands in order to regulate properly the use of navigable waters. Because the tribe sought "in effect[] to invoke a federal court's jurisdiction to quiet title to sovereign lands," Justice O'Connor concluded that the action had to be dismissed. *Id.* at 296.

Thus, we conclude that the identity of plaintiffs is not dispositive in cases that implicate the *Coeur d'Alene* exception to *Ex parte Young. See also Anderson-Tully Co.*, 571 F.3d at 763 (ordering dismissal of an action filed by a private party under *Coeur d'Alene*); *MacDonald*, 164 F.3d at 972 (same). Federal courts lack jurisdiction over all actions where a plaintiff seeks relief that is "close to the functional equivalent of quiet title" over submerged lands that have a "unique status in the law" and which are "infused with a public trust." *Coeur d'Alene*, 521 U.S. at 282–83.

III.

Finally, Plaintiffs argue that the district court erred in denying them leave to amend their complaint. But this was not an abuse of discretion. As should be clear, any amendment would be futile. No set of facts pleaded by Plaintiffs would allow their complaint to proceed, given *Coeur d'Alene*.

**AFFIRMED.**